226 N.J. Super. 343 (1988)
544 A.2d 411
IN THE MATTER OF ROBROS RECYCLING CORPORATION.
Superior Court of New Jersey, Appellate Division.
Submitted February 22, 1988.
Decided July 12, 1988.
*345 Before Judges J.H. COLEMAN, HAVEY and STERN.
Riccardelli, Gasiorowski & De Massi attorneys for appellants (Joseph Rosa, Jr., on the brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for the New Jersey Board of Public Utilities (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Susan J. Vercheak, Deputy Attorney General, on the brief).
The opinion of the court was delivered by STERN, J.A.D.
Robros Recycling Corporation (Robros) appeals from a decision and order of the Board of Public Utilities (BPU), dated October 27, 1986, (1) denying Robros's application for a certificate of public convenience and necessity to operate a solid waste transfer station pursuant to N.J.S.A. 48:13A-6, (2) assessing a penalty in the amount of $31,000 for "operation of an uncertificated transfer station" for at least 62 days in the months of June, July and August 1986 and (3) declaring that denial of the application for the certificate of public convenience and necessity left Robros "with authority to receive only source-separated, 100% recyclable materials for processing and/or disposal" and putting Robros on notice "that [if] it engage[d] in solid waste collection and/or disposal activities *346 without the requisite Board approvals, authorizations and certificates, it [would be] subject to penalties as provided for by law." The third portion of the decision and order is not really contested before us. However, on this appeal Robros contends that it was entitled to a plenary hearing in this consolidated matter relating to its application for a certificate of public convenience and necessity and an order to show cause issued by the BPU as a result of Robros's operation of the transfer station without a certificate.
Robros argues that its application for the certificate required a plenary hearing in light of N.J.S.A. 52:14B-11 and that a hearing was required with respect to the order to show cause by virtue of the fact that there was a "contested case" as defined by the Administrative Procedure Act, N.J.S.A. 52:14B-2(b) and -9, and the implementing provisions of the Administrative Code. Robros also contends that, even if a plenary hearing was not required, the decision of the BPU lacked adequate findings of fact and conclusions of law, embodied a penalty in violation of authorizing legislation, N.J.S.A. 48:13A-12b, and constituted an abuse of discretion. It also contends that the Administrative Law Judge (ALJ) erred in basing her decision on an answer which constituted an admission to the ultimate fact and, therefore, should not have been considered by the BPU.
We affirm the determination of the BPU that a penalty could be assessed but conclude that the amount of the penalty exceeded the amount authorized by law. We also conclude that a plenary hearing is necessary for consideration of Robros's petition for issuance of a certificate of public convenience and necessity. The amount of the penalty should also be reconsidered at that hearing. In our view, these holdings resolve all issues in dispute on this appeal and moot any questions not directly discussed.

I.
In 1981, Robros filed an application for a certificate of public convenience and necessity to operate a solid waste transfer *347 station pursuant to N.J.S.A. 48:13A-6. It also filed a proposed tariff. The application and tariff were amended, apparently on more than one occasion, and the matter was ultimately referred to the Office of Administrative Law for hearing as a contested case, pursuant to N.J.S.A. 52:14F-1 et seq. The facts concerning the processing of the application, number of amendments and reasons for the delay were never fully developed at a plenary hearing because the BPU staff moved for summary disposition based on facts admitted in the application and in discovery in advance of a hearing.[1] These facts were:
(1) Robros applied for a certificate of public convenience and necessity to operate a transfer and low technology resource recovery operation on February 18, 1981.
(2) Initial operation designed to test equipment began in late 1984.
(3) Initial commercial operations for handling solid waste began in early 1985.
(4) Operations involving processing of recycled paper and cardboard began in early 1983.
(5) The following haulers are using the Robros facility: United Carting Company, Browning Ferris Industries, Vaparo, Inc., Five Brothers Carting Company, Inc. and Garramone & Sons.
A hearing on the motion for summary judgment was conducted before an ALJ on June 3, 1986. At the hearing, counsel for Robros indicated that "notwithstanding the fact that the Company ha[d] conceded its operator ha[d] operated in violation of Title 48 requiring a Certificate of Public Convenience and Necessity, the Company nonetheless [was] entitled to a full and complete hearing on its application for a license prior to a denial if that [was] to be the result." The parties referred to our unpublished opinion in In the Matter of the Petition of A-1 Carting Co., Inc. to Purchase Assets and Issue Evidence of *348 Debt Due in More than 12 Months, A-5545-83T7 (App.Div. January 14, 1986), certif. den. 104 N.J. 381 (1986), counsel for Robros contending that this court did not hold that the failure to obtain a certificate is "in and of itself dispositive." According to Robros's counsel, "[w]hat the Court said was that the Board could, if it chose, rely on that circumstance as a basis for denial." Counsel claimed that a full hearing was required in order to develop "the history of the processing of the matter before the Board" because:
[i]t was bu[mb]led and botched. The Company was put in an impossible position with the full knowledge of the Board of Public Utilities and Staff. The Board and Staff made repeated and continuous representations that they would process the application. They knew the facility was under construction. They knew the facility was completed. They knew each and every step this applicant was taking in the course of proceeding with his construction.
Counsel requested an opportunity "to explain any and all mitigating circumstances which mitigate against the negative inferences" and arguments for automatic rejection. He also claimed that Robros "should have the opportunity to present any and all mitigating factors against imposition of a penalty, the amount of penalty, et cetera, because the Board indeed ha[d] wide discretion in terms of what penalty, if any, it [would] impose." In essence, Robros's counsel argued that the Board could issue a certificate notwithstanding the fact that Robros had operated in violation of the statute. Counsel argued against summary judgment stating:
We do not contest the point raised which is that operation in violation of the statute is a factor which the Board may consider and, indeed, may rely on in then denying the application for license.
We, however, say that we should have the opportunity to present our case by way of mitigation of those circumstances in an effort to convince the Board that notwithstanding that the future conduct of the Company will be such as to justify the issuance of a license.
After lengthy discussion concerning the meaning of the A-1 Carting case, the ALJ indicated that she would grant summary judgment against Robros with respect to the application. However, she invited an evidentiary hearing with respect to the subject of the penalty, including the issue of mitigation, on the *349 order to show cause. Counsel for Robros objected to a hearing with respect to the penalty only. He argued that the procedure denied due process and indicated that he was not prepared to present the issue in isolation. He also contended it would be inappropriate to present issues in mitigation of the financial penalty which could later be presented against it by the Board in support of the summary judgment and the cease and desist order. However, the hearing proceeded, and John D. Goomas, an employee of Robros, was called to testify. Among other things, Goomas indicated that all necessary applications were filed with the BPU, that there were amendments and many communications with staff and that ultimately BPU staff indicated that "there [wasn't] any other problem," that the certificate would be issued "any day now" and that it could not "find any reason why [Robros] shouldn't have an approval." Robros obtained necessary approvals from the Department of Environmental Protection.
After the hearing, the judge issued a written opinion. She never considered the issue of mitigation, apparently because she ruled in favor of Robros with respect to the maximum penalty authorized by law. She recommended imposition of the maximum fine, $500, and concluded that the BPU could issue a cease and desist order under N.J.S.A. 48:13A-12c. However, she recommended excluding from the order a pre-existing business, so that Robros would be required to "cease and desist accepting all waste except that which [was] 100% recyclable and fully separated." The BPU agreed with the ALJ's recommendation concerning denial of the certificate but increased the fine to $31,000. The BPU concluded that it had the authority to deny the application for the certificate to preclude Robros from all operations other than recycling as defined by the DEP and ordered it to cease and desist receiving material other than "source-separated, 100% recyclable materials for processing and/or disposal." The decision and order of the BPU does not refer to the testimony of Goomas or include specific fact-finding. Given the procedural developments and lack of fact-finding *350 before the ALJ with respect to the impact of the operation of the transfer station on the issuance of the certificate, we remand for a plenary hearing on the application. As the evidentiary hearing conducted before the ALJ was ostensibly limited to the issue of penalty in connection with the order to show cause, we cannot conclude that petitioner was given an adequate opportunity to present its case in support of the certificate or that BPU staff had the opportunity to respond.

II.
A contested matter can be summarily disposed of before an ALJ without a plenary hearing in instances where the undisputed material facts, as developed on motion or otherwise, indicate that a particular disposition is required as a matter of law. See N.J.S.A. 52:14B-2(b); N.J.A.C. 1:1-12.5(a). Hence, once it became clear that Robros did not contest its operation of the transfer station without a certificate, the "contested matter" could have been closed without a further hearing if the law required that the application for the certificate be denied on that basis. Here the ALJ found that the operation of a transfer station required rejection of the certificate. Relying on the unpublished opinion of this court in A-1 Carting, the ALJ granted BPU's motion for summary decision on the ground that Robros lacked the qualification for operating a transfer station and obtaining a certificate because it had operated the station in advance of receiving the certificate.[2] The ALJ concluded:
The facts in the instant case are close enough to those in A-1 to persuade me that the holding therein should apply. In the instant case, Robros knew it had to file and that it could not commence business until Board approval. It chose to do a very substantial business without the required certification. I CONCLUDE Robros has shown lack of qualification based on these facts alone *351 and there is no reason to weigh such other qualifications as financial responsibility. Thus the petition for certification must be DENIED. [emphasis supplied].
The BPU found that the ALJ's reliance on A-1 Carting was "unnecessary" and that "[a]pplication of the appropriate statutes and regulations to the factual situation at hand [lead] logically to the conclusion that Robros's application should be denied." It concluded:
Finally, Robros contends that the proceedings at the Office of Administrative Law did not satisfy the requirement of a hearing pursuant to N.J.S.A. 48:13A-6. We note here that Robros did have the opportunity to argue before [the ALJ] that a full record should be developed in this matter. The ALJ concluded that the record was sufficient to support a denial of Robros's application. In this situation we FIND that the proceedings at OAL complied with the hearing requirement of N.J.S.A. 48:13A-6.
Therefore, the Board HEREBY MODIFIES the Initial Decision insofar as it relies on A-1 Carting. The Board HEREBY ADOPTS the Initial Decision as to its conclusion that Robros's application for a Certificate should be denied.
We are uncertain as to the meaning of the opinion of the BPU because the ALJ relied upon a per se rule as a result of the unpublished opinion in A-1 Carting and the BPU gave no factual analysis or reasons for its conclusion. We conclude that a mere remand to the BPU for further findings of fact and conclusions of law in support of its position would not suffice in this case. Our view is premised on the fact that a record must be made by which the ALJ initially and the BPU on review can determine the various factors as they relate to the application.
A decision of the BPU, like any administrative agency after a contested proceeding, must be based on adequate fact-findings and conclusions of law. See N.J.S.A. 52:14B-10(d); Public Advocate Dep't. v. Public Utilities Bd., 189 N.J. Super. 491, 507 (App.Div. 1983). We must determine whether the conclusion of the agency "`could reasonably have been reached on sufficient credible evidence present in the record.'" See Close v. Kordulak Brothers, 44 N.J. 589, 599 (1965) (quoting State v. Johnson 42 N.J. 146, 162 (1964); see also Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 92 (1973).
*352 N.J.S.A. 48:13A-6 provides that no person shall be permitted to engage in the business of solid waste collection or disposal "until found by the [BPU] to be qualified by experience, training or education to engage in such business, is able to furnish proof of financial responsibility, and holds a certificate of public convenience and necessity issued by the [BPU.]" We read nothing in the statute to require rejection of petitioner's application based exclusively on the fact that petitioner operated the transfer station without prior approval and receipt of a certificate. While we reject the per se rule relied upon by the ALJ, we also conclude that operation of the transfer station without a certificate may be an important factor in considering whether the application should be granted. Cf. Matter of Scioscia, 216 N.J. Super. 644, 650-55 (App.Div. 1987) certif. den. 107 N.J. 652 (1987) (revocation of certificate of public convenience and necessity appropriate because of conviction of firm's manager and half owner).
We do not necessarily disagree with the position of the BPU before us that "[b]ecause the appellant knowingly conducted operations as a solid waste [transfer station] without a certificate, the Board properly determined that appellant was not qualified to receive a Certificate of Public Convenience and Necessity." The difficulty with that position in this case, however, is that the decision of the BPU, while rejecting the ALJ's reliance on A-1 Carting, seems itself to adopt a per se rule[3] and, in any event, is not based upon consideration of any record which permits evaluation of any other factor or factors. The impact of the failure to obtain a certificate, in light of the background with respect to the prior application or applications, the reasons for the time it took to process them, alleged acquiescence in the operation by the BPU, and the statutory *353 criteria related to the applicant's experience, training and education and proof of financial responsibility, are all factors to be considered with respect to issuance of the certificate in this case. The ALJ and ultimately the BPU must consider the totality of circumstances relevant to the criteria for issuance of the certificate after development of a full record and consideration of all possibly relevant factors.

III.
At the hearing before the ALJ, Robros admitted operating a solid waste facility without a certificate. The ALJ recommended assessment of a $500 penalty for operation of the uncertified transfer station. Relying upon In re Suspension of DeMarco, 83 N.J. 25 (1980), the BPU increased the penalty to $31,000.
N.J.S.A. 48:13A-12b provided, in part, at the time of the unauthorized operation:
Any person who shall violate any provision of this act or any rule, regulation or administrative order promulgated hereunder, or who shall engage in the solid waste collection business or solid waste disposal business without having been issued a certificate of public convenience and necessity, shall be liable to a penalty of not more than $500.00 for a first offense, not less than $100.00 or more than $1,000.00 for a second offense and not less than $500.00 or more than $1,000.00 for a third and every subsequent offense.[4]
In the view of the BPU, each day of wrongful operation constituted a "first offense" in the absence of a prior conviction or adjudication. The BPU's opinion concluded that DeMarco
involved a penalty statute similar to N.J.S.A. 48:13A-12, and concluded that such a statute must be interpreted so as to have the deterrent effect intended by the legislature, even if it requires a finding that more than one `first offense' has occurred. In this matter, the Board is of the opinion that a penalty of up to $500 for each day of uncertificated operation is appropriate.
*354 DeMarco involved a statute relating to the jurisdiction of the Board of Medical Examiners. Here, as in DeMarco, the issue is whether there may be more than one "first offense" prior to the entry of judgment or finding of a violation. Like Robros, DeMarco contended that there could be only one "first conviction." DeMarco upheld a total penalty which involved assessment for various acts each constituting a "first offense." The Court stated that the statutory language "suggest[ed] potential liability for more than one $200 penalty upon the first conviction, since it [was] applicable only to violations that occur[red] before the first conviction." 83 N.J. at 33 (emphasis in original). The Court concluded:
[W]e construe the provision in question to impose a separate $200 penalty for each and every violation, whether the violation is asserted alone or along with others as the basis for a conviction; stepped-up separate penalties apply only where there has been a prior conviction. Respondent's construction of the statute is not only less persuasive but totally ignores the deterrent purpose of the provision.
* * * * * * * *
The question ultimately is one of fairness, given the statute and its provisions, and given the situation of the defendant. Should he have understood that his conduct was proscribed, should he have understood that the penalty about to be imposed was the sanction intended by the Legislature? The test is whether the statute gives a person of ordinary intelligence fair notice that his conduct is forbidden and punishable by certain penalties. That test, however, does not consist of a linguistic analysis conducted in a vacuum. It includes not simply the language of the provision itself, but related provisions as well, and especially the reality to which the provision is to be applied. [83 N.J. at 34-37].
DeMarco involved 92 separate malpractice victims and 92 separate incidents of injection. This case involved the operation of only one transfer station without a certificate on an ongoing or continuing basis. Nothing in the statute makes each hour, day or week of operation a separate offense or makes the continuous illegal operation severable.
Both the majority and dissenting opinions in DeMarco cite with approval and discuss our opinion in In re Suspension of License of Wolfe, 160 N.J. Super. 114 (App.Div. 1978), certif. den. 78 N.J. 406 (1978). In Wolfe we held that only a single *355 penalty of $200 for a first offense could be imposed on a practitioner for a continuing series of violations while practicing medicine and surgery over a period of 434 days.[5] Both DeMarco and Wolfe recognize that statutes creating penalties such as those involved in this case must be strictly construed. See In re Suspension of DeMarco, supra, 83 N.J. at 36; In re Suspension of License of Wolfe, supra, 160 N.J. Super. at 119-120. As noted in Wolfe, where the legislature contemplates a daily fine or fine for each separate act of a continuing series of violations of a statute, it has expressly provided for severable penalties. Because we are not here dealing with isolated or severable events or victims, as was the case in DeMarco, supra, we must be guided by the principles embodied in Wolfe. Our decision is not premised on a belief that a $500 penalty is adequate or appropriate. That issue is for the legislature to decide, and the Legislature recently amended the penalty schedule embodied in N.J.S.A. 48:13A-12b. See L. 1987, c. 149 § 1. The Legislature may, of course, further amend the statute, if it elects to do so, to redefine what constitutes a "first offense."
We determine that the legislatively authorized maximum penalty under these circumstances at the time of the unauthorized operation in this case was only $500.00 because operation *356 of the transfer station involved ongoing conduct without interruption, which constituted only "one offense."

IV.
We believe that the ultimate penalty which may be imposed in this case should be based on the totality of circumstances, including the date of initial application and the timing of its processing, reasons for the delay and causes thereof, as well as possible acquiescence in the operation by BPU. As noted, we conclude that a penalty was appropriately assessed and that a penalty of $500 or less may be reimposed, after consideration of all relevant factors, on the remand. While we do not believe that a new record must necessarily be generated with respect to the penalty, given the need for an evidentiary hearing on the application for the certificate, we believe that imposition of the penalty should be reconsidered on remand.
Accordingly, the decision of the BPU denying the certificate and imposing a penalty is reversed, and the matter is remanded to the BPU with directions that it be transferred to the OAL to conduct a plenary hearing on the "contested case."
NOTES
[1] In response to a request for discovery in advance of the hearing after reference of the matter to the Office of Administrative Law, Robros indicated that:

[T]he facility is in operation. Initial operations which were designed to test equipment began in late 1984. Initial commercial operations for handling solid waste began in early 1985. Operations involving processing of recycled paper and cardboard began in early 1983.
[2] We recognize that R. 1:36-3 prohibits our reliance upon an unpublished case as "precedent" or "binding" and further prohibits our citation to such a decision. We refer to the A-1 Carting case not as precedent or because of any binding effect but rather merely to point out the fact of its significance and impact in the proceedings now under review before us.
[3] As noted in the brief of the BPU, "[t]he Board of Public Utilities largely adopted the ALJ's recommendation. The Board accepted her findings and conclusions that operation of a solid waste utility without a certificate constitutes a fundamental lack of qualifications to hold such a certificate."
[4] By L. 1987, c. 149, § 1, effective June 24, 1987, the penalties were increased to $1,000 for a first offense, $5,000 for a second offense and $10,000 for a third or subsequent offense. No one argues that the amendment may affect the penalty in this case. See N.J.S.A. 1:1-15.
[5] DeMarco and Wolfe concerned N.J.S.A. 45:9-22 which dealt with a first "offense" and N.J.S.A. 45:9-26 which involved violations after a "conviction." While, as Justice Schreiber stated in his dissent in DeMarco, Wolfe held that "[a] second, subsequent or continuing offender may only have enhanced monetary penalties assessed against him after a conviction as a first offender," 160 N.J. Super. at 120, and reduced a $43,400 penalty imposed because Wolfe employed "his wife for a minimum of 434 days to practice medicine and surgery in violation of N.J.S.A. 45:9-16(g)," 160 N.J. Super. at 118, the Wolfe court also sustained, as the majority in DeMarco noted, separate penalties for five separate statutory violations because each "constitute[d] a separate and distinct offense" and "[e]ach qualified[d] as a `first offense' for purposes of the penalties authorized." 160 N.J. Super. at 122. See also DeMarco, supra, 83 N.J. at 38 n. 7.