245 N.J. Super. 567 (1991)
586 A.2d 322
PENELOPE DUGAN, PETITIONER-APPELLANT,
v.
STOCKTON STATE COLLEGE, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 1990.
Decided February 5, 1991.
*569 Before Judges PRESSLER, BAIME and ARNOLD M. STEIN.
Robert A. Fagella argued the cause for appellant (Zazzali, Zazzali, Fagella & Nowak, attorneys; Robert A. Fagella of counsel and on the brief).
Melissa E. Hager argued the cause for respondents Stockton State College and State Board of Higher Education (Robert J. Del Tufo, Attorney General, attorney; Mary C. Jacobson, *570 Deputy Attorney General, of counsel; David Earle Powers, Deputy Attorney General, on the brief).
The opinion of the Court was delivered by ARNOLD M. STEIN, J.A.D.
Penelope Dugan appeals the final decision of the State Board of Higher Education rejecting a claim that she has tenure as a faculty member of Stockton State College under the State and County College Tenure Act, N.J.S.A. 18A:60-6 et seq. We reverse and remand for an evidentiary hearing to determine the actual duties performed by Dugan during her thirteen years of service as an employee of Stockton State College.
Dugan was first employed as an instructor in English in July 1976. She signed a one-year letter contract. She was reappointed by letter contract to a series of one-year terms as an English instructor until October 1980, when she signed a contract for the academic year 1980-81 as a "Coordinator of Developmental Education in Reading and Critical Thinking, Office of Central Studies." The contract provided:
This is an unclassified staff position, service in which does not accrue toward tenure. Unclassified staff are eligible for multi-year contracts after five years of continuous service.
Dugan was reappointed to the same position for the academic years 1981-1982 and 1983-1984.
On June 21, 1984, Dugan signed a one-year letter contract as "Assistant Professor of Writing, Faculty of General Studies." The letter, signed by the college president, stated:
Please know that this contract, which supercedes your contract dated December 15, 1983, provides for your appointment to a faculty position. Service in faculty rank does not accrue for a multiyear contract. Upon acceptance of this contract you will be evaluated as a first-year probationary faculty member; and, accordingly, 1984-85 will count as the first year of your eligibility for tenure under appropriate state laws and regulations.
Under her signature, Dugan added the following handwritten statement:
Pursuant to N.J.S.A. 18A:60-6 et seq., nothing contained herein, nor any past action or statement of mine, is to be interpreted as in any way constituting a *571 waiver or modification of my claim to tenure or a waiver of my right to pursue such claim in any forum at any time.
Dugan continued as an Assistant Professor of Writing for the academic years 1985-86 and 1987-89.
By letter contract dated December 10, 1987, she was again reappointed to the same position for the academic year 1988-89.
The college president stated in this letter:
Your contributions to Stockton are deeply appreciated and I look forward to continuing our work together.
Dugan again added her handwritten claim of tenure to the contract.
Despite the unanimous vote of a faculty review committee, Dugan's supervising dean recommended against her reappointment or acquisition of tenure status. The college's vice president of academic affairs upheld the dean's rejection:
It is my professional judgment that Ms. Dugan does not meet fully the College's institution expectations and criteria for reappointment that confers tenure.
Although the record does not indicate, we assume that the the college's board of trustees also rejected Dugan's tenure claim and her reappointment.
Dugan claims tenure under the State and County College Tenure Act, N.J.S.A. 18A:60-6 et seq. N.J.S.A. 18A:60-8 provides:
Faculty members shall be under tenure in their academic rank, but not in any administrative position, during good behavior, efficiency and satisfactory professional performance, as evidenced by formal evaluation and shall not be dismissed or reduced in compensation except for inefficiency, unsatisfactory professional performance, incapacity or other just cause ... after employment in such college or by such board of trustees for
a. 5 consecutive calendar years; or
b. 5 consecutive academic years, together with employment at the beginning of the next academic year; or
c. the equivalent or more than 5 academic years within a period of any 6 consecutive academic years.
N.J.S.A. 18A:60-7 defines "academic rank" and "faculty member":

*572 a. "Academic rank" means instructor, assistant professor, associate professor and professor.
b. "Faculty member" means any full-time member of the teaching staff appointed with academic rank. Pursuant to rules propagated by the State Board of Higher Education, other full-time professional persons shall be considered faculty members if they concurrently hold academic rank.
The Administrative Law Judge took no testimony. Pursuant to N.J.A.C. 1:1-12.5, she granted the college's dismissal motion without a plenary hearing after reviewing the moving and opposing papers. Matter of Robros Recycling Corp., 226 N.J. Super. 343, 350, 544 A.2d 411 (App.Div. 1988), certif. denied, 113 N.J. 638, 552 A.2d 164 (1988). She accepted as true
that petitioner at all times had a full-time teaching position, even though admittedly her title changed from instructor of English (academic rank), to Coordinator of Developmental Education (an administrative title), to assistant professor (academic rank).
The ALJ rejected Dugan's contention that she is entitled to tenure because her job responsibilities were continuously academic during her thirteen years of employment, even though she was given an administrative title from 1980 to 1984:
I CONCLUDE that mere full-time teaching employment for many years in a State college is not sufficient to achieve tenure status under N.J.S.A. 18A:60-7 and 8 because the statutes require that a faculty member must be appointed in a specific title by a board of trustees, serve in that title until the regulatory time requirements mandate a grant or denial of tenure, at which time his or her qualifications for tenure are assessed, and be granted tenure by vote of the board of trustees.
The Chancellor of Higher Education affirmed the ALJ's ruling. He added that even if Dugan had served thirteen years as a faculty member with academic rank and with an academic title, she was not entitled to tenure unless it was conferred by the college's board of trustees pursuant to regulations promulgated by the State Department of Higher Education:
If, through administrative error or some other method an individual at a state or county college has fulfilled the statutory requirements for tenure but has not met the tenure qualifications of the institution or the Board of Higher Education requirements, and has not received tenure by vote of the college board of trustees, then a cause of action might lie against the college. It is not appropriate as a remedy, however, to grant such an unqualified person tenure. The remedy must lie elsewhere.
*573 The State Board of Higher Education affirmed the chancellor's decision.
We reject the ALJ's reasoning that only the title held by Dugan during her years of service determines whether tenure is to be conferred and that the particular duties she performed in those years when she was given a "non-academic" title count for nothing. This exaltation of form over substance permits an intolerable evasion of the County and State College Tenure Act.
N.J.S.A. 18A:60-8 grants tenure to faculty members in their academic rank when they have served five consecutive calendar years, or five consecutive academic years together with employment at the beginning of the next academic year, or five academic years within a period of six consecutive academic years. Dugan says that whatever her title during her thirteen years of employment by the college, her duties were primarily academic in nature. The job descriptions itemized in her various employment contracts give considerable weight to her argument. (See attached Appendix.) If her allegations are true, she has acquired tenure in academic rank.
The County and State College Tenure Act specifically defines the conditions under which a faculty member is entitled to the security of tenure. That legislation makes tenure a mandatory term and condition of employment. Spiewak v. Rutherford Bd. of Ed., 90 N.J. 63, 72, 447 A.2d 140 (1982). Tenure statutes should be liberally construed. Id. at 74, 447 A.2d 140. They should not be interpreted to permit avoidance of tenure by manipulation of job titles.
The chancellor's ruling is also incorrect. Tenure is conferred by operation of N.J.S.A. 18A:60-8. Once the statutory prerequisites have been met, there is no further participation by the board of trustees. As the Supreme Court pointed out in Assoc. of State Col. Fac. v. Dungan, 64 N.J. 338, 316 A.2d 425 (1974), the State Board of Higher Education
has been legislatively vested with power to establish tenure guidelines which it considers educationally desireable so long as those guidelines are reasonable in *574 nature and do not impair any specific statutory provision dealing with tenure.

....

N.J.S.A. 18A:60-1 does not set forth criteria which are to govern the granting of tenure; nor does the ... "Act concerning tenure for certain State and County college faculty members". L. 1973, c. 163 (N.J.S.A. 18A:60-6 et seq.). Id. at 351, 316 A.2d 425 (emphasis added).
We also reject the chancellor's conclusion that an action for damages is the only remedy for a person who has acquired a statutory right to tenure without prior approval of the college board of trustees. The proper remedy is reinstatement to the academic position and the conferring of tenure. American Assoc. of Univ. Profs. v. Bloomfield Col., 129 N.J. Super. 249, 273-75, 322 A.2d 846 (Ch.Div. 1974), aff'd, 136 N.J. Super. 442, 448, 346 A.2d 615 (App.Div. 1975).
We find no merit in respondent's contention that Dugan's present appeal is time-barred pursuant to N.J.A.C. 9:2-6.2 because she did not "appeal" from the college's offer of a "staff position" rather than as an English instructor for the academic year 1980-81. Dugan could not have taken such an "appeal." She was a non-tenured faculty member offered a fifth year of employment. Had she rejected the offer she would have been without employment. She had no standing to assert a right to a fifth year of employment as an English instructor.
Moreover, Dugan cannot be said to have "waived" her tenure claim by signing of her various employment contracts. Either she acquired tenure pursuant to N.J.S.A. 18A:60-8 during her thirteen years of employment or she did not. The statute makes tenure a mandatory term and condition of employment, one which supersedes and cannot be overridden by contract provisions. Spiewak, supra, 90 N.J. at 176, 447 A.2d 140; State v. State Supervisory Employees Assn., 78 N.J. 54, 82, n. 7, 393 A.2d 233 (1978).
*575 Finally, we reject respondent's alternative contention that the one-year time limit within which to appeal began to run when the president of Stockton State advised Dugan by letter in 1981 that she disagreed with Dugan's claim of tenure. This was not a disputed or contested matter under N.J.S.A. 52:14B-2(b) or N.J.A.C. 1:1-2.1. It was simply an exchange of letters in which Dugan claimed that she had tenure and the college president replied that she did not. It was not an official action by anyone in the higher education hierarchy from which an appeal could be taken. N.J. Civil Service Ass'n v. State, 88 N.J. 605, 611, 443 A.2d 1070 (1982).
The decision of the State Board of Higher Education is reversed. The matter is remanded to the State Board of Higher Education for factual findings (pursuant to the Administrative Procedure Act (N.J.S.A. 52:14B-1, -10) to determine the work duties actually performed by Penelope Dugan during her thirteen years of employment at Stockton State College. If her duties were academic during any of the time periods set forth in N.J.S.A. 18A:60-8, she is entitled to tenure and such other relief as may flow from such finding.
Reversed and remanded. We do not retain jurisdiction.

APPENDIX

JOB RESPONSIBILITIES OUTLINED IN LETTER CONTRACTS OF EMPLOYMENT
Academic year 1976-1977 (Instructor in English)
1) Preceptor to approximately sixteen students.
2) Teach courses and seminars in English and Communication Skills.
3) Offer courses in the General Studies curriculum.
4) Teach and supervise work of students in tutorial and independent study projects.
5) Assist in the development and supervision of student seminars and special projects.
6) Teach in experimental and interdisciplinary programs.
7) Take part in colloquia, conferences, and other informal teaching.
*576 Academic year 1980-81 (Coordinator of Developmental Education)
1) Coordinating the development and application of placement criteria used to identify students in need of additional instruction to improve their basic skills in Reading and Critical Thinking.
2) Offering courses in Developmental Reading and Critical Thinking and in the General Studies curriculum.
3) Counseling individual students on the nature and extent of their skills deficiencies, and serving as a general preceptor to approximately 16 students.
4) Coordinating the recruitment and training of other members of the faculty who teach courses in Developmental Reading and Critical Thinking.
5) Participation in the continuous review and re-evaluation of program methods and effectiveness.
6) Other duties may be assigned by the Dean of General Studies or the Vice President for Academic Affairs.
Academic year 1984-85 (Assistant Professor of Writing)
1) Preceptor to approximately 16 students.
2) Offer courses and seminars in Writing, and Critical Thinking.
3) Offer courses in the General Studies curriculum.
4) Supervise the work of independent or tutorial students, student seminars, and special projects.
5) Teach in experimental and interdisciplinary programs.
Academic year 1988-89 (Assistant Professor of Writing)
1) Preceptor to students as deemed appropriate.
2) Offer courses and seminars in Writing and related areas.
3) Offer courses in the General Studies curriculum.
4) Supervise the work of independent or tutorial students, student seminars and special projects.
5) Teach in experimental and interdisciplinary programs.
6) Other duties as assigned by the Divisional Chairperson of General Studies, the Dean of General and Experimental Studies or the Vice President for Academic Affairs.