287 N.J. Super. 407 (1996)
671 A.2d 182
JAMES B. HEALY, PLAINTIFF-APPELLANT,
v.
FAIRLEIGH DICKINSON UNIVERSITY, DEFENDANT-RESPONDENT, AND FRANCIS J. MERTZ, NANCY S. BARRETT, MORDECHAI ROZANSKI, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 5, 1995.
Decided February 20, 1996.
*409 Before Judges PRESSLER, KEEFE and WEFING.
Timothy R. Hott argued the cause for appellant (Hott & Margolis, attorneys).
Maurice J. Nelligan, Jr. argued the cause for respondents (Apruzzese, McDermott, Mastro & Murphy, attorneys).
The opinion of the court was delivered by KEEFE, J.A.D.
Plaintiff, James B. Healy (Healy), appeals only from that part of a final judgment which determined, as a matter of law, that he did not acquire de facto tenure at defendant Fairleigh Dickinson University (University). Consequently, this appeal only involves the complaint brought by Healy against the University. We affirm.
In 1980, Healy became a full time faculty member of the University with the rank of adjunct associate professor. His one year contract for the academic year 1980-81 incorporated the terms of the University's collective bargaining agreement with the American Association of University Professors' contract (the AAUP contract). Thereafter, Healy received a series of one year probationary contracts through the academic year 1984-85. During that period, Healy requested promotion to full professor and was denied the promotion because he lacked a doctorate degree. The lack of the doctorate and his failure to publish were cited in 1984 memos issued by his supervising dean as reasons why Healy could not gain tenure under the AAUP contract. Healy received copies of those memos.
Healy's appointment for his sixth academic year (1985-86) was different from the prior years in that the letter of appointment notified him that his position as associate professor was a "non-tenured *410 position." Healy registered no complaint over that designation.
At the conclusion of the 1985-86 academic year, Healy received notice that he would be a senior administrator with the rank of associate dean. However, his appointment required that he also teach three credits per semester without additional compensation. Unlike faculty members who were on a monthly payroll, Healy was paid semi-monthly as were other administrators.
As a senior administrator, Healy was subject to annual performance evaluations. The evaluation for his final year at the University showed that his overall performance was "significantly below expectations." On that basis he was discharged in June 1990. Healy maintained that he could not be discharged because he had acquired de facto tenure under the provisions of the AAUP contract and its successor, the 1988 Faculty Handbook (the Handbook) which contained essentially the same provisions for acquiring tenure.
Both the AAUP contract and the Handbook provide, among other things respecting tenure, that a faculty member who completes a probationary period of fourteen continuous academic semesters as a full-time professor shall have tenure upon reaching the next academic semester following the completion of such probationary period. Because of Healy's role as an administrator/instructor beginning in 1986-87, there was a factual dispute as to whether he had served the requisite number of years as a faculty member under the above provision. The jury resolved that issue in Healy's favor.
However, the University maintained that the resolution of that factual dispute was irrelevant to the question of whether Healy had obtained tenure. The University maintained that the clause relied upon by Healy to assert de facto tenure was not inserted in the contract for that purpose. It argued that tenure could not be obtained absent an affirmative grant of tenure by the University in accord with well defined procedures set forth both in the AAUP contract and the Handbook.
*411 In a post-jury verdict bench opinion, the trial judge agreed with the University. She concluded that the evidence revealed that the AAUP contract and Handbook provisions dealing with tenure were not ambiguous and that their interpretation was a legal question which only the court could resolve. As such, the trial judge concluded that Healy's reliance on the previously cited provision of the AAUP contract and Handbook was misplaced, and that de facto tenure could not be attained at the University.
On appeal Healy contends that the judge erred in: (1) substituting her decision for the jury's verdict; (2) disregarding the testimony of his expert witness; and (3) interpreting the AAUP contract and the Handbook provisions under relevant case law and applicable contract construction principles so as to conclude that he did not have tenure.

I
Healy maintains that the trial judge's determination that he did not have tenure ignored the jury's verdict in his favor on the tenure issue and is the equivalent of a judgement notwithstanding the jury verdict. Thus, Healy implicitly contends that the entire tenure issue was before the jury.
Healy's contention is clearly wrong. The record reflects that the judge determined that the tenure issue was a mixed question of fact and law because his claim of de facto tenure involved a determination of the number of semesters he was employed as a faculty member (the fact issue), as well as an interpretation of the AAUP contract and the Handbook provision upon which he relied to support his contention that he had acquired de facto tenure (the legal issue). As to the latter issue, the judge determined, and Healy conceded, that the provisions were not ambiguous, and thus, their interpretation was a question of law for the court.
Although the judge did not say so specifically, she apparently reasoned that if the jury resolved the fact issue against Healy, there would be no need for her to construe the contract because the factual predicate for Healy's alleged contract right would not *412 then exist. Consequently, she elected to have the jury answer the fact issue first. The jury was not asked to determine if plaintiff had tenure, but rather was only asked to determine the length of plaintiff's service as a faculty member. This point is made clear in the judge's following response to a jury question.
The only question you have before you is whether or not Mr. Healy served starting with the 15th consecutive [semester] as a faculty person. Tenure is not a question you're going to determine. You're only going to determine that fact. Was he faculty? Did he serve as faculty for the 15 consecutive [semesters]? That's on the tenure question, so you  so whether or not that means a contract for Mr. Healy is not something you're going to decide.

II
Healy next contends that the trial judge erred in disregarding the testimony of his expert witness on academic tenure. Dr. Koster opined that based upon his "reading" of the Handbook, Healy had acquired tenure by virtue of his length of service. By admitting Koster's testimony into evidence, Healy argues that the trial judge implicitly conceded that the issue was one for the jury to decide. We reject that contention.
By the end of the trial, it was clear that there was no ambiguity in either the AAUP contract or the Handbook in respect of the clause upon which Healy relied to assert de facto tenure.
The undisputed testimony at trial showed that the subject provision had originated during the time when there was collective bargaining between the faculty union and the University. The provision had been proposed as a means of determining exactly when the award of tenure became effective for those faculty who had been hired in the middle of an academic year. Earlier labor agreements had simply referred to a seven year probationary term which left unanswered when the award of tenure became effective if one were hired in January of an academic year. The switch to fourteen continuous semesters clearly defined exactly when tenure attached. After the demise of collective bargaining, the same provision was carried forward into the Handbook.
*413 Under our evidence rules, expert testimony is admissible only where it "will assist the trier of fact...." N.J.R.E. 702. Expert witnesses simply may not render opinions on matters which involve a question of the law. See, e.g. Marx & Co., Inc. v. Diners' Club Inc., 550 F.2d 505 (2nd Cir.), cert. denied, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977) (holding that it was error for the trial court to allow a lawyer/witness to render his opinion on the legal significance of certain contract terms, and the legal obligations arising therefrom). State v. Grimes, 235 N.J. Super. 75, 79 (App.Div.), certif. denied, 118 N.J. 222, 570 A.2d 976 (1989) (holding expert opinion is not admissible concerning the domestic law of the forum). Therefore, once the trial court correctly determined that the interpretation of the contract language was a legal matter, she was obligated to disregard the expert's opinion concerning its interpretation. The question before the court was not whether hypothetically there can be de facto tenure. The question was whether the parties provided for it.

III
We are satisfied that the trial judge properly applied the rules of contract construction in arriving at her conclusion that de facto tenure was not provided for in the AAUP contract or the Handbook.
Healy's reliance upon Dugan v. Stockton State College, 245 N.J. Super. 567, 586 A.2d 322 (App.Div. 1991); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); and Kovats v. Rutgers University, 633 F. Supp. 1469 (D.N.J. 1986), remanded, 822 F.2d 1303 (3rd Cir.1987), to support his contention that New Jersey law permits the acquisition of tenure at a private university by virtue of length of service is misplaced. In Dugan, we held that a state college employee who met the statutory prerequisites for tenure under the State and County College Tenure Act, N.J.S.A. 18A:60-1 to -15, automatically acquired tenure by operation of law without further participation by the board of trustees. Id. at 573, 586 A.2d 322. The decision rested *414 solely on the fact that tenure was governed by the provisions of the statute. Ibid. Thus, the cases are completely distinguishable.
Perry, supra, is also clearly distinguishable. In that case, plaintiff was a professor at a state junior college which had no formal tenure system. 408 U.S. at 594, 92 S.Ct. at 2696, 33 L.Ed.2d at 575. The Supreme Court simply held that a teacher employed for a number of years at the same institution should be permitted to show that, while no explicit tenure system existed, a de facto tenure system did exist at the institution. Id. at 602, 92 S.Ct. at 2700, 33 L.Ed.2d at 580. Here, unlike Perry, the University has a formal, established tenure procedure set forth in detail in the AAUP contract and the successor Handbook. Furthermore, Perry involved a public institution, thereby implicating the Fourteenth Amendment. The University here is a private institution.
Finally, Kovats, supra, is of no assistance to Healy. The Third Circuit opinion simply stands for the proposition that the question of whether the professors involved in that case had acquired de facto tenure under a university regulation based upon their length of service was a triable issue of fact. 822 F.2d at 1313-1315. As the University points out in its brief, on remand, Judge Debevoise in an unpublished opinion, using an analysis strikingly similar to the one used by the trial judge in this case, concluded that a Rutgers faculty member does not have an automatic right to tenure if he or she is reappointed for a term extending beyond the probationary term defined in the regulation. The reason for the judge's conclusion was that such a result would be inconsistent with the detailed evaluation procedures set forth in the regulation. Although Judge Debevoise's resolution of an analogous issue is not binding on us, it is nonetheless helpful in resolving this appeal. Healy's reply brief offers no meaningful response to the defendant's exposition of the manner in which a similar issue to the one at hand was ultimately resolved by another trial court.
In Newark Publisher's Assoc. v. Newark Typographical Union, 22 N.J. 419, 126 A.2d 348 (1956), our Supreme Court established a *415 principle of contract interpretation that undoubtedly guided both Judge Debevoise and the trial judge in this case:
A subsidiary provision is not so to be interpreted as to conflict with the obvious "dominant" or "principal" purpose of the contract. We seek for the intention of the parties; and to this end the writing is to have a reasonable interpretation. Disproportionate emphasis upon a word or a clause or a single provision does not serve the purpose of interpretation.... [T]hus the literal sense of terms may be qualified by the context.
* * * * * * * *
Evidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement, even where the contract is free from ambiguity, not for the purpose of changing the writing, but to secure light by which its actual significance may be measured.
[Id. at 426-27, 126 A.2d 348].
Applying these principles to the matter under consideration, we conclude that Healy's "disproportionate emphasis upon ... a single [Handbook] provision" to support his tenure claim "does not serve the purpose of interpretation." Id. at 426, 126 A.2d 348. In addition, the interpretation of the probationary appointments provision urged by Healy "conflict[s] with the `dominant' or `principal' purpose of the [tenure policy]," which places substantive and procedural prerequisites on the acquisition of tenure. Ibid. Moreover, in respect of how the parties conducted themselves pursuant to the AAUP contract and the Handbook, the record reflects that no one at the University had ever acquired tenure absent an affirmative grant of tenure by the Board of Trustees.
The judgement under review is affirmed.