760 A.2d 823 (2000)
334 N.J. Super. 649
Jerome BODDY, Plaintiff-Appellant,
v.
CIGNA PROPERTY & CASUALTY COMPANIES, Defendant, and
Atlantic Employers' Insurance Company, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 2000.
Decided October 30, 2000.
*824 Robert P. Zisgen, Mahwah, argued the cause for appellant (Tuttle & Zisgen, attorneys; Mr. Zisgen, on the brief).
Jeffrey M. Kadish, Livingston, argued the cause for respondent (Morgan, Melhuish, Monaghan, Arvidson & Lisowski, attorneys; Heidi P. Rubin Cohen and Mr. Kadish, on the brief).
Before Judges PETRELLA and BRAITHWAITE.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Plaintiff Jerome Boddy appeals from the grant of summary judgment in favor of defendant Atlantic Employers Insurance Company (Atlantic).[1] Boddy had sought a declaratory judgment that his homeowners' insurance policy issued by his insurer, Atlantic, effective June 26, 1997, covered the theft of his motorcycle and damage to his vehicle.
The policy provided coverage for "personal property you or a household member owns or uses anywhere in the world." "Personal property" was defined as "any tangible property other than real estate." The policy states, "We will generally cover property losses that result from a theft or attempted theft. We will also cover property if it disappears from a known location and it is probable that the loss was caused by theft." The policy excludes from coverage, among other things, "[m]otorized land vehicles including their equipment or accessories, except those vehicles which are not licensed for road use and are used to *825 assist the handicapped or to service a place where you or a household member regularly lives."
Boddy asserts that, on or about February 12, 1998, his residence in Mahwah was broken into by an unknown person or persons and that his 1991 Harley Davidson Electra-Glide FLH motorcycle was stolen and his 1987 Chevrolet automobile was damaged in the course of the theft. Boddy sought approximately $20,000 for the loss of the motorcycle and $800 for the damage to his automobile. At the time the motorcycle was stolen it was off the road for the winter and was not otherwise insured. The motorcycle insurance was allowed to lapse because Boddy had suffered a stroke which left him unable to ride the motorcycle. He took the position that when his motorcycle was garaged at his house it was covered by his homeowners' insurance because the policy covered property damage. Likewise, at the time his automobile was damaged it was neither registered for road use nor insured under a separate automobile insurance policy. Boddy took the position that since both the motorcycle and automobile were unlicensed, they came within the exception to the "motorized land vehicle" exclusion.
Atlantic denied coverage based on the "motorized land vehicle" exclusion, and Boddy instituted suit. Thereafter, Atlantic successfully moved for summary judgment.
At the hearing, Boddy argued that the term "motorized land vehicles" is ambiguous and that the policy was not written in a simple, clear, and easily readable manner. Boddy relied on his retained expert's report which stated:
If the intent of the exclusion is to exclude coverage under the policy for automobiles, motorcycles, mopeds and similar motor vehicles, whether licensed for road use or not, then the wording employed by Atlantic Employers fails to achieve this purpose and creates a material and substantive ambiguity in the mind of the reader and certainly in the mind of the average named insured who purchases a policy.
The motion judge agreed with Atlantic, concluding that the policy language was unambiguous and that the interpretation of the insurance agreement was "a pure legal question" for the court to decide.

I.
Boddy asserts that the exclusion clause was not written in a "simple, clear, understandable and easily readable" manner as required by the Plain Language Act (N.J.S.A. 56:12-1, et seq.) (the Act), specifically under N.J.S.A. 56:12-2 as to insurance policies. The Act lists various guidelines that the court "may consider in determining whether a consumer contract as a whole complies" with this requirement. These factors include, among other things, confusing cross references, exceptions to exceptions, double negatives, and words that are either obsolete or have a legal meaning different from their common meaning. N.J.S.A. 56:12-10(a). Although an insurer may seek certification of compliance with the Act from the Attorney General or Commissioner of Insurance, the "[f]ailure to [seek certification] does not show a lack of good faith nor does it raise a presumption that the contract violates this act." N.J.S.A. 56:12-8(e).
The policy exclusion provision at issue in this case contains an exception within an exception, which the statutory guidelines imply should be avoided. N.J.S.A. 56:12-10(a)(3). However, the existence of the exception to the exclusion does not necessarily indicate noncompliance so as to vitiate the exclusion. N.J.S.A. 56:12-2 indicates that a contract must be "written in a simple, clear, understandable and easily readable way as a whole." (emphasis added). Although the insurance policy exclusion in this case contains an exception within an exception, Boddy did not establish that the policy or the provision as a whole violates the statute, *826 and the judge did not so find. See Wheatly v. Sook Suh, 217 N.J.Super. 233, 239, 525 A.2d 340 (App.Div.1987) ("In construing a contract a court must not focus on an isolated phrase but should read the contract as a whole as well as considering the surrounding circumstances.").
Moreover, the fact that Atlantic did not seek review by or certification from the Attorney General or Commissioner of Insurance, "does not show a lack of good faith nor does it raise a presumption that the contract violates this act." N.J.S.A. 56:12-8(e). In addition, N.J.S.A. 56:12-10 contains guidelines which "a court, the Attorney General or the Commissioner of Insurance, ... may consider in determining whether [the] consumer contract as a whole complies with this act." Thus, there is discretion as to how much consideration should be given to the guidelines in finding a violation of the Act.
As noted, the existence of an exception to an exclusion clause does not in itself constitute a violation of the Act. Although decided prior to the effective date of the Act, N.J. Property Liab. Guar. Ass'n v. Brown, 174 N.J.Super. 629, 633-634, 417 A.2d 117 (App.Div.), certif. denied, 85 N.J. 462, 427 A.2d 561 (1980), is instructive. There, a bail bondsman in his office accidentally shot a friend who had paid him a social visit with a gun possessed for business reasons. We held that the exception to the insured's homeowners' policy exclusion for non-business pursuits provided coverage because "[s]howing a gun to a friend in such circumstances would not be an activity ordinarily incident" to the duties of a bail bondsman. Id. at 634, 417 A.2d 117. Cases decided after the effective date of the Act have also given effect to exception to exclusion clauses. See Burdge v. Excelsior Ins. Co., 194 N.J.Super. 320, 476 A.2d 880 (App.Div.1984) (holding that the underlying action arose out of insured's exercise of his personal and political rights, and not out of "business pursuits," and, thus, the policy exclusion for claims "arising out of business pursuits" did not apply because the exception to the exclusion for "non-business pursuits" was applicable.). Because an exception to an exclusion clause does not, in and of itself, constitute a violation of the Act, the motion judge correctly granted summary judgment on that basis.

II.
Boddy contends that there is a triable issue of fact as to whether his automobile and motorcycle are "motorized land vehicles" under his homeowners' policy.
Boddy relies on Gibson v. Callaghan, 158 N.J. 662, 677, 730 A.2d 1278 (1999), to support his argument that reversal is warranted. In Gibson, homeowners' insurance coverage turned on the meaning of "household," which was not defined in the policy. Although the Court rejected the definition of "household" in Black's Law Dictionary, the rationale for doing so was that "the meaning of `household' will vary depending on the circumstances of a given case." Ibid. Gibson noted that the "insurance industry has known for almost forty years that the term `household' is susceptible of several interpretations." Id. at 678, 730 A.2d 1278. Thus, the court found the language used in the policy to be ambiguous and construed the disputed terms in favor of the insured. Id. at 677, 730 A.2d 1278.
It is well-established that insurance contracts are to be construed in accordance with the reasonable expectations of the average policy holder and any ambiguity must be resolved against the insurance company. Gibson v. Callaghan, supra (158 N.J. at 670, 730 A.2d 1278). Furthermore, "in the absence of a specific definition in an insurance policy, the words must be interpreted in accordance with their ordinary, plain and usual meaning." Daus v. Marble, 270 N.J.Super. 241, 251, 636 A.2d 1091 (App.Div.1994); see also Gibson v. Callaghan, supra (158 N.J. at 670, 730 A.2d 1278).
*827 In Daus, we addressed whether a forklift vehicle was a "motorized land conveyance" within the meaning of plaintiff's insurance policy. Daus relied upon Websters's New Collegiate Dictionary and the Oxford English Dictionary for the definition of a forklift. We found a forklift to be an example of a motorized land conveyance based upon the "commonly accepted definitions of forklift." 270 N.J.Super. at 251, 636 A.2d 1091. The use of reference books is an accepted method of ascertaining the "ordinary" meaning of terms. We found "no difficulty in concluding that the average policy holder should expect that a motorized vehicle designed to transport cargo driven by a human operator would be considered a motorized land conveyance." Ibid.
The term "motorized land vehicle" has been held to be synonymous with automobiles, ATVs, and other types of recreational motor vehicles. In Allstate Ins. Co. v. Moraca, 244 N.J.Super. 5, 8, 581 A.2d 510 (App.Div.1990), a homeowners' policy excluded coverage for "bodily injury or property damages arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motorized land vehicle or trailer." (emphasis added). We treated the term "motorized land vehicle" as synonymous with automobiles and other types of vehicles. Id. at 13, 581 A.2d 510. In Salem Group v. Oliver, 248 N.J.Super. 265, 269, 590 A.2d 1194 (App.Div.1991), the policy at issue defined "recreational motor vehicle" as "a motorized golf cart, snowmobile, or any other motorized land vehicle owned by an insured designed for recreational use off public roads." (emphasis added). We held that there was "no doubt" that defendant's ATV was a motor vehicle as defined by the policy. Ibid.
Here, Atlantic relied upon Websters Thesaurus to define "motorized land vehicle" and found that it refers to, among other things, motorcycles and automobiles. A thesaurus can be an appropriate source to ascertain the "ordinary, plain and usual meaning" of terms when they are undefined in a policy. Daus, supra (270 N.J.Super. at 251, 636 A.2d 1091). Further, unlike the term "household" in Gibson, "motorized land vehicle" is not susceptible to different meanings. The only interpretation of the term offered by Boddy was that a "motorized land vehicle" was "something you ran into the woods maybe like a quad." However, the "ordinary, plain and usual meaning" of the term is that it refers to a "motorized" (i.e., "motor-driven") "vehicle" (i.e., a "conveyance" such as a "motorcycle" or "automobile") that is designed for land use. See Rogets's International Thesaurus, 145-146, 214 (3d ed.1962). Thus, motorcycles and automobiles are types of "motorized land vehicles" and the judge correctly held that the term is unambiguous.

III.
Boddy asserts that genuine issues of material fact should have precluded summary judgment. Summary judgment must be granted if:
the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law. R. 4:46-2(c).
To determine whether there is a genuine issue of fact, the judge must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540, 666 A.2d 146 (1995). On appeal, the standard is the same. We decide first whether there was a genuine issue of material fact and, if not, we decide whether the ruling at issue was correct as a matter *828 of law, Prudential Property Ins. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div.1998), taking into account usual principles of construction. Thus, insurance policy exclusions are narrowly construed and the insurer has the burden of establishing the exclusion. American Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 41, 713 A.2d 1007 (1998). However, the "words of an insurance policy should be given their ordinary meaning, and in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability." Longobardi v. Chubb Ins. Co. of New Jersey, 121 N.J. 530, 537, 582 A.2d 1257 (1990); see also Cobra Products v. Federal Ins. Co., 317 N.J.Super. 392, 400, 722 A.2d 545 (App.Div.1998) ("[A] clear and unambiguous insurance policy must be enforced as written."). Although insurance policies should be construed in favor of the insured, courts "should not write for the insured a better policy of insurance than the one purchased." Walker Rogge, Inc. v. Chelsea Title & Guar. Co., 116 N.J. 517, 529, 562 A.2d 208 (1989). While courts "should not ignore an exclusion's clear meaning, if there is another fair interpretation, the court must construe the insurance policy in favor of coverage and against the insurer, adopting the interpretation supporting coverage." Cobra Products v. Federal Ins. Co., supra (317 N.J.Super. at 401, 722 A.2d 545). However, "[t]his does not mean ... that any far-fetched interpretation of a policy will be sufficient to create an ambiguity requiring coverage." Ibid. (quoting Stafford v. T.H.E. Ins. Co., 309 N.J.Super. 97, 105, 706 A.2d 785 (App.Div.1998)).
Boddy's expert's opinion was that the policy exclusion was poorly drafted and "creates a material and substantive ambiguity in the mind of the ... average named insured who purchases the policy." But, expert testimony is admissible only where it "will assist the trier of fact...." N.J.R.E. 702. It is well-established that "[e]xpert witnesses simply may not render opinions on matters which involve a question of the law." Healy v. Fairleigh Dickinson Univ., 287 N.J.Super. 407, 413, 671 A.2d 182 (App.Div.), certif. denied, 145 N.J. 372, 678 A.2d 713, cert. denied, 519 U.S. 1007, 117 S.Ct. 510, 136 L.Ed.2d 399 (1996). In Healy we stated that "once the trial court correctly determined that the interpretation of the contract language was a legal matter, [the court] was obligated to disregard the expert's opinion concerning its interpretation." Ibid. Here, the motion judge correctly held that the interpretation of the policy exclusion was a legal matter and the proffered expert opinion was of no moment.
As discussed above, the motion judge correctly found the term "motorized land vehicles" to be unambiguous as a matter of law. Thus, the remaining question is whether there is another fair interpretation of the policy exclusion that supports coverage in accordance with Cobra Products. Boddy asserts that the policy exclusion should be interpreted to provide coverage for his claims because his motorcycle and automobile were "not licensed for road use." However, the full exception to the exclusion reads "except those vehicles which are not licensed for road use and are used to assist the handicapped or to service a place where you or a household member regularly lives." (emphasis added). Boddy's interpretation of the exception ignores the language "and are used to assist the handicapped or to service a place where you or a household member regularly lives." Such a strained interpretation of the policy is clearly insufficient to create an ambiguity requiring coverage under Cobra Products and would effectively write "a better policy of insurance than the one purchased." It also ignores the clear meaning of the policy. For Boddy's claims to come within the exception to the exclusion, his vehicles must not only have been unlicensed, but must also have been used to assist the handicapped or to service a place where he or a household member *829 regularly lives. Such facts were never established or advanced.
The motion judge correctly rejected Boddy's attorney's suggestion that the motorcycle or automobile could be used to service Boddy's household by riding it to the hardware store to purchase something needed for the home because it could not be simultaneously unlicensed for road use and lawfully driven to the store. Moreover, there was no evidence presented that indicates Boddy's motorcycle or automobile was used to assist the handicapped. Therefore, his claims do not fall within the policy exception. Boddy failed to set forth a reasonable interpretation of the exclusion to support his claim of coverage. Even if the policy exclusion clause is "perhaps not perfectly written," as the motion judge suggested, it was correctly held to be unambiguous as a matter of law.
There was no genuine issue as to any material fact and Atlantic was entitled to judgment. R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 666 A.2d 146 (1995).
Affirmed.
NOTES
[1] Cigna Property & Casualty Companies and Atlantic are related companies. For convenience we refer only to Atlantic.