CHRIS MIKKELSEN, PETITIONER-RESPONDENT, v. N. L. INDUSTRIES, RESPONDENT-APPELLANT.

Argued September 28, 1976—Decided February 15, 1977.

210

*Mr. John W. O'Brien* argued the cause for appellant (*Messrs. O'Brien, Brett, Martin and Leitner,* attorneys).

*Mr. George H. Conover, Jr.* argued the cause for respondent (*Messrs. Levinson, Conover, Fink and Axelrod,* attorneys; *Mr. Robert D. Rosenwasser* on the brief).

The opinion of the court was delivered by

CONFORD, P. J. A. D., Temporarily Assigned. This appeal presents to this 'Court for the first time questions concerning the compensability, under the Workmen's 'Compensation Act (*N. J. S. A.* 34:15–1 *et seq.*), of an injury sustained by an employee during his attendance at a union meeting held after normal working hours and off the employer's premises. Both the Division of Workmen's Compensation and the Appellate Division, one judge dissenting, held the accident compensable. Because of the dissent, the appeal is before us as of right. *R.* 2:2–1(a)(2).

On February 2, 1973 respondent Chris Mikkelsen was employed by N. L. Industries, Inc. as a pump mechanic. On that day he participated in a union meeting which had been called specially for the purpose of ratification or rejection of a collective bargaining contract offered by the employer. The meeting was conducted at an inn located across town from defendant's plant. No members of N. L. Industries' management were present, and the employer did not provide union members with cars for transportation or the costs of transportation. The sole matter of business discussed at the meeting was the proposed bargaining contract, which the union membership voted to ratify. After the meeting, re-

spondent left the inn. While walking in the parking lot he stepped in a hole and injured his ankle.

 The issue of the employer's liability for payment of compensation benefits came before the Compensation Judge on a stipulation of the facts just summarized. He found that the employee's attendance at the meeting to vote upon a contract offered by the employer was clearly an activity which simultaneously benefitted both parties, and that, therefore, the accident could be said to have arisen "in the course of employment" as required by the Act. *N. J. S. A.* 34:15–7. Subsequently, judgment was entered in the employee's favor for an award for partial permanent disability. As heretofore noted, the Appellate Division affirmed, holding in an unreported *per curiam* opinion that on the "limited and narrow" stipulation of facts before him the Compensation Judge was justified in his finding that the activities in which the employee was engaged when injured simultaneously benefitted both himself and his employer and therefore constituted a basis for compensation. We agree.

 In support of its contention that the accident herein did not arise "in the course of employment", appellant points out that attendance at a union meeting was outside the scope of respondent's employment duties, that such participation was not under the control and supervision of his employer, and that the accident occurred off the employer's premises and at a time beyond working hours. It is, of course, long settled that, consistent with the remedial purposes of the compensation act and the liberal construction properly accorded its provisions, an employee need not actually be working in order to meet the "course of employment" test. Thus, in one line of cases our courts have extended the protection of the act to injuries sustained within the scope of the work-period and the work-place while the employee was engaged in personally motivated, but customary, or reasonably expectable activities. See, *e. g., Crotty v. Driver Harris Co.,* 49 *N. J. Super.* 60, 69–70 (App. Div.) certif. den. 27 *N. J.* 75 (1958); *Buerkle v. United Parcel Service,* 26 *N. J.*

*Super.* 404, 407–408 (App. Div. 1953); *Waskevitz v. Clifton Paper Board Co.,* 7 *N. J. Super.* 1, 3 (App. Div.), certif. den. 4 *N. J.* 561 (1950). Analogies may also be found in the cases carving out exceptions to the general rule that an employee is not in the course of employment when he is going to or coming from work. See, *e. g., Bergman v. Parnes Brothers, Inc.,* 58 *N. J.* 559 (1971); *Hammond v. The Great Atlantic & Pacific Tea Co.,* 56 *N. J.* 7 (1970). Similarly, we have accepted the proposition that activities other than those which an employee was hired to perform, if nevertheless conferring a clear and substantial benefit upon the employer as well as the employee, may be in the course of employment for purposes of the compensation act. This doctrine has found application in a wide variety of settings, bringing within the ambit of compensability injuries arising out of an employee's educational, recreational, or health-care related activities, having a *nexus* to the employment relationship. See, *e. g., Strzelecki v. Johns-Manville,* 65 *N. J.* 314 (1974) (work-related education course subsidized by employer); *Saintsing v. Steinbach Company,* 1 *N. J. Super.* 259 (App. Div.), aff'd o. b. 2 *N. J.* 304 (1949) (vaccination supplied by employer during smallpox epidemic); *Ricciardi v. Damar Products Co.,* 45 *N. J.* 54 (1965) (company picnic sponsored by employer); *Cuna v. Bd. of Fire Com'rs, Avenel,* 42 *N. J.* 292 (1964) (company baseball game); *Harrison v. Stanton,* 26 *N. J. Super.* 194 (App. Div. 1953); aff'd o. b. 14 *N. J.* 172 (1954) (social event serving public relations purposes of employer); *Du Charme v. Columbia Engineering Co.,* 31 *N. J. Super.* 167 (App. Div. 1954) (employer-sponsored Christmas party); *Kelly v. Hackensack Water Co.,* 10 *N. J. Super.* 528 (App. Div. 1950) (employer-subsidized annual outing). *Cf.* 1 *Larson, Law of Workmen's Compensation* (1972) §§ 27.30, 27.32. The employee's primary thesis, approved both by the compensation judge and the Appellate Division, is that the "mutual benefit" rationale elaborated in the last-mentioned line of cases is equally applicable here.

It is noted at the outset that where the activity in which an employee was engaged when injured constitutes a clear and substantial benefit to the employer, an independent ground exists for the conclusion that the accident arose in the course of employment. Thus, where the activity otherwise confers a benefit upon the employer, lack of employer initiative of, or control over, the activity, as here, is not of itself fatal. See *Complitano v. Steel & Alloy Tank Co.,* 63 *N. J. Super.* 444, 469 (App. Div. 1960) (dissenting opinion), rev'd on dissenting opinion below, 34 *N. J.* 300 (1961). Similarly, if such benefit is present, it is not decisive that the accident occurred away from the work premises. See *Strzelecki v. Johns-Manville, supra,* 65 *N. J.* 314; *Complitano v. Steel & Alloy Tank Co., supra,* 63 *N. J. Super.* 456, 463–468. "Rather the question is whether the event is sufficiently work-connected to bring the employees within the coverage of the compensation law, a law which provides protection for employees, not because of fault or failure of the employer, but rather upon the belief that the enterprise itself should absorb losses which inevitably and predictably are an incident of its operations." *Ricciardi v. Damar Products Co., supra,* 45 *N. J.* at 60.

The substantial question on this appeal, therefore, is whether the employee's attendance at a union meeting held to ratify a bargaining contract offered by the employer constitutes an activity benefitting both, such that the employer enterprise should absorb a loss predictably incident thereto. Since the precise factual situation here is one of first impression in the courts of this State, it is useful initially to note important decisional factors in the "mutual benefit" cases generally, and, secondly, to examine with greater specificity the cases involving claims for compensation benefits for injuries arising out of union-related activities.

A review of the decisions in this State finding compensable accidents arising out of educational and recreational activities on the theory of mutual benefit makes it quite apparent that the doctrine is particularly suited to case-by-

case analysis, with the results in each instance depending upon fact-shadings surrounding several relevant broad factors. See *Complitano v. Steel & Alloy Tank Co., supra,* 63 *N. J. Super.* at 459. In each of the cases in which compensation was allowed the activity in issue either clearly resulted in some direct benefit to the employer beyond the intangible value of enhanced employee health and morale common to all kinds of recreation and social life or inferentially evidenced some employer benefit, direct or indirect. Thus, relevant though not necessarily determinative factors have been that the activity served to advertise the enterprise to the general public (*Cuna v. Bd. of Fire Com'rs, Avenel, supra,* 42 *N. J.* at 305–306), or to up-grade the employee's job-related skills (*Strzelecki v. Johns-Manville, supra,* 65 *N. J.* 314), or substantially to improve management-labor relations (*Du Charme v. Columbia Engineering Co., supra,* 31 *N. J. Super.* 167); or that the employer encouraged participation in the program of mutual benefit (*Saintsing v. Steinbach Company, supra,* 1 *N. J. Super.* at 260, 264), or subsidized its operation (*Ricciardi v. Damar Products Co., supra,* 45 *N. J.* at 59–60).

Comparable patterns run through the few reported cases in which employees have sought compensation for injuries occurring in the course of union-related pursuits. In cases involving unilateral union activities conferring, if any, only a remote or indirect benefit upon the employing enterprise, compensation has uniformly been denied. Thus compensation was denied where the injuries were sustained during picketing or strike activities. See *Fantasia v. Hess Oil & Chemical Corp.,* 110 *N. J. Super.* 360 (Cty. Ct. 1970), aff'd o. b. 113 *N. J. Super.* 229 (App. Div.), certif. den. 58 *N. J.* 160 (1971); *Universal Cyclops St. Corp. v. Workmen's Compensation A. Bd.,* 9 *Pa. Comwlth.* 176, 305 *A.* 2d 757 (Comwlth. Ct. 1973). *Cf.* Larson, *supra, Law of Workmen's Compensation,* § 27.33. Similarly, in *Pacific Indemnity Co. v. Industrial Acc. Com'n,* 27 *Cal. App.* 2d 499, 81 *P.* 2d 572, 575 (Dist. Ct. App. 1938), recovery for an injury sus-

tained during the course of an on-premises union meeting was denied, the court stressing that the meeting was held behind closed doors, and that its purpose was not communicated to the employer, so that "[f]or aught that appears the meeting may have been held for the purpose of declaring a sit-down strike, demanding an increase in wages, or demanding shorter hours of employment." See also *Tegels v. Kaiser-Frazer Corp.*, 329 *Mich.* 84, 44 *N. W.* 2d 880 (Sup. Ct. 1950).

On the other hand, where the injury occurred while the employee was engaged in union-related activity which directly accrued to the employer's benefit, compensation has generally been permitted. In *Gerard v. American Can Co.*, 32 *N. J. Super.* 310 (App. Div. 1954), a union steward was injured by a co-employee during an attempt to resolve a grievance based on purported violations of a preexisting bargaining agreement. Finding the injury compensable, the court stressed that a bargaining contract signed by the employer provided for such grievance settlement activity with free time and pay therefor, and that the contract had the express purpose of promoting harmonious labor-management relations, so that when the steward was investigating a complaint he was furthering the contractual interests of the employer as well as the union. In *Fidelity & Casualty Co. v. Landers*, 89 *Ga. App.* 100, 78 *S. E.* 2d 878 (Ct. App. 1953), where a shop steward sustained fatal injuries while he was checking carpenters for membership and dues payments on behalf of the union, the court similarly rested its finding that the accident arose in the course of employment on the ground that a bargaining contract between the employer and the union provided for such checking activity without a commensurate reduction in salary and that the agreement was intended to foster harmonious management-labor relations. Finally, in *Kennedy v. Thompson Lumber Co.*, 223 *Minn.* 277, 26 *N. W.* 2d 459 (Sup. Ct. 1947), the court found compensable an injury sustained by a shop steward while attempting to prevent a work stoppage by urging union

leaders to arrive at a contract settlement at the culmination of a series of negotiations with both union and management.

 ■ In the light of the foregoing cases and the general principles heretofore noted, we are convinced that, on the specific facts of this case, a finding that respondent's attendance at the union meeting simultaneously benefitted both himself and his employer to an extent justifying compensability was warranted. While it might be asserted that theoretically all union activities promote the intangible values of enhanced employee morale and therefore, derivatively, the long-range welfare of employers as well, it is obvious that a line of demarcation must be drawn. Such cases as the *Fantasia* decision, *supra,* make it clear that beyond that line the union activity is completely unilateral and antagonistic to the employer, and thus not an employment-connected milieu for compensation purposes. The line can be drawn only on a case-by-case basis.

The purpose of the union meeting in this case was solely to pass on a proffered collective bargaining agreement. As the cases previously cited recognize, the consummation of such a contract and the carrying out of its terms play a significant role in preventing industrial strife and unrest, and in promoting the uninterrupted operation of an enterprise. Where, in fact, the union is a recognized bargaining unit, the collective agreement may be viewed as a necessary element of the employer's business. Further, while the union members' primary concern in a bargaining contract assuredly is the promotion of their own interests, nevertheless such agreements typically involve give and take between employer and employees, with concessions rendered on both sides. On today's industrial scene, the successful consummation of the periodic labor negotiations is accounted a substantial employer benefit. The bilateral character of the particular union activity here involved is highlighted by the fact that the meeting was specifically held to respond to the employer's offer of the contract.

In *Salierno v. Micro Stamping Co.*, 72 *N. J.* 205, decided this day, in affirming its judgment we approved the reasoning of the Appellate Division, 136 *N. J. Super.* 172, 176–177 (1975), that participation of a union steward at a negotiating session held to formulate a new contract was essential to the achievement of a mutually satisfactory agreement, and that such activity simultaneously benefitted both union and employer. The collective vote of the individual union members at a ratification meeting is also necessary to the consummation of an agreement. The fact that this employee was exercising a privilege common to all members of the union presents little basis for a distinction on the central question of benefit to the employer. But see *Tegels v. Kaiser-Frazer Corp., supra.*

■ ■ There is a suggestion in appellant's brief that recovery should be precluded for the independent reason that the employee was injured while en route from the union meeting. The suggested limitation has little merit. It is well settled that where an employee is injured while traveling to or from a special mission, as distinguished from going to or coming from his regular place of work, he is within the protection of the Workmen's Compensation Act. *Bobertz v. Board of Education of Hillside Twp.*, 134 *N. J. L.* 444 (Sup. Ct. 1946), reversed on other grounds, 135 *N. J. L.* 555 (E. & A. 1947); *cf. O'Brien v. First Camden National Bank & Trust Co.*, 37 *N. J.* 158, 162 (1962). The foregoing exception to the "going and coming" rule has been extended by this Court to give the coverage of the statute to employees traveling to or from off-premises recreational activities, *Ricciardi v. Damar Products Co., supra*, 45 *N. J.* at 61–62 and educational activities, *Strzelecki v. Johns-Manville, supra*, 65 *N. J.* at 319–320. No reason is apparent why the "special errand" exception should not be applicable in this case if attendance at the union meeting is otherwise incident to employment under the mutual benefit doctrine.

It is also significant that we have uniformly allowed compensation where the injury takes place on the employer's parking lot, immediately incidental to going to or coming from work. See *Hammond v. The Great Atlantic & Pacific Tea Co., supra,* and cases cited therein, 56 *N. J.* at 14.

Accordingly, the judgment of the Appellate Division is affirmed.

*For affirmance*—Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—6.

*For reversal*—None.