CONTINENTAL WESTERN INSURANCE COMPANY, Plaintiff and Appellee,

v.

The DAM BAR, Christine T. Bitz, Defendants,

Jacqueline Schneider, Sandy Frier, Cheri Mettler, Anita Frier, Michelle Moss, and Vicki Swafford, Defendants and Appellants.

Civ. No. 910233.

Supreme Court of North Dakota.

Dec. 9, 1991.

Zuger, Kirmis, Bolinske & Smith, Bismarck, for plaintiff and appellee; argued by Brent John Edison.

Nodland & Dickson, Bismarck, for defendants and appellants; argued by Thomas A. Dickson.

ERICKSTAD, Chief Justice.

Sandy Frier, Cheri Mettler, Anita Frier, Michelle Moss, and Vicki Swafford appeal from the judgment of the District Court for Burleigh County, granting Continental Western Insurance Company's motion for summary judgment in a declaratory judgment action. We affirm.

On September 10, 1988, David Frier was killed in an automobile accident. Although a minor, David had apparently, earlier, been provided alcoholic beverages at The Dam Bar in Mercer County. David's five surviving sisters (the Friers), the appellants in this case, subsequently brought an action against The Dam Bar, its owner Christine Bitz, and Jacqueline Schneider, the employee of the bar who served David the drinks. In this underlying action, the Friers alleged that David's death was a result of his being served alcoholic beverages.[1] Continental Western, thereafter, brought this declaratory judgment action seeking a declaration that it had no duty to defend or indemnify any of the defendants in the underlying action. The district court determined that Continental Western's policy explicitly excluded from coverage "dram shop" liability, and that the endorsement attached to the policy did not change, nor was it in conflict with, the exclusion, and thus granted Continental Western's motion for summary judgment. This appeal followed.

Determining the legal effect of an insurance contract, as with any contract, is generally a question of law for a court to decide. *Link v. Federated Mutual Insurance Company*, 386 N.W.2d 897, 899 (N.D.1986); *Carlson v. Doekson Gross, Inc.*, 372 N.W.2d 902, 904 (N.D.1985). Thus, on appeal, this Court will independently examine and construe the insurance policy in question to determine whether or not the trial court erred in its construction. *Aid Insurance Services, Inc. v. Geiger*, 294 N.W.2d 411, 413 (N.D.1980).

The insurance policy in question in this case covered general commercial liability.

---

1. In the underlying action, the Friers amended their initial complaint and substituted the words "goods or products" in place of the previous words "alcoholic beverages." This was apparently done to conform to the language of the endorsement on which they sought to premise coverage. Regardless of the change in language, the complaint alleges that David Frier was served alcohol, and as a result was killed in an automobile accident.

The relevant portions of the first amended complaint, in the underlying cause of action, read as follows:

"10.

"On September 10, 1988, the Defendants' provided goods or products to nineteen (19) year old David Frier.

"11.

"As a result of the Defendants' providing these products to David Frier, he subsequently died in an automobile accident."

Paragraphs ten and eleven of the initial complaint in the underlying action read as follows:

"10.

"On September 10, 1988, the Defendants' provided alcoholic beverages in excessive amounts to nineteen (19) year-old David Frier.

"11.

"As a result of the Defendants' wrongful conduct, David Frier subsequently died in an automobile accident."

Under both the initial and first amended complaints in the underlying action, paragraphs ten and eleven are the only provisions which allege a theory or basis for the defendants' liability.

However, the policy specifically excluded from coverage, "dram shop" liability. Under coverage A, entitled *"BODILY INJURY AND PROPERTY DAMAGE LIABILITY,"* we find the following language:

"*2. Exclusions.*

This Insurance does not apply to:

\* \* \* \* \* \*

c. 'Bodily injury' or 'property damage' for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages."

Additionally, the policy maintained an aggregate coverage limit for "products-completed operations" separate from the general aggregate coverage limit. Under the limits of insurance section of the policy, it stated:

"3. The Products–Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of injury and damage included in the 'products-completed operations hazard.' "

"Products-completed operations hazard" was a term defined in the policy's definitions section as follows:

"11. a. 'Products-completed operations hazard' includes all 'bodily injury' and 'property damage' *occurring away from premises* you own or rent and arising out of 'your product' or 'your work' except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. [Emphasis added.]"

Although, in this case, the general aggregate limit and the products-completed operations aggregate limit were the same ($100,000 for each), an endorsement was made part of the policy which redefined the term "Products-completed operations hazard." The endorsement was captioned in bold letters *"PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED."* The endorsement, in relevant part, stated:

"With respect to 'bodily injury' or 'property damage' arising out of 'your products' manufactured, sold, handled or distributed:

1. On, from or in connection with the use of any premises described in the Schedule, or

2. In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf,

Paragraph a. of the definition of 'Products—completed operations hazard' in the DEFINITIONS Section is replaced by the following:

a. 'Products—completed operations hazard' includes all 'bodily injury' and 'property damage' that arises out of 'your products' if the 'bodily injury' or 'property damage' occurs after you have relinquished possession of those products."

The Friers argue that the endorsement created an apparent conflict between the exclusionary language found in the main body of the policy and the language of the endorsement.[2] We do not agree.

When construing an endorsement to an insurance contract, we must view the endorsement in light of the policy it alters. *See* 2 Couch on Insurance 2d (rev ed) § 15:30 (1984). Contracts, including ones of insurance, must be taken as a whole "to give effect to every part if reasonably practicable." Section 9–07–06, N.D.C.C.; *see*

**2.** Although the Friers maintain that there is an apparent conflict between the "dram shop" exclusion and the endorsement, they assert that the apparent conflict does not necessarily create

any ambiguity. Rather, they apparently argue that under general rules of construction the language of the endorsement should prevail.

*also Haugen v. Auto–Owners Insurance Company of Lansing, Michigan*, 191 N.W.2d 274, 280 (N.D.1971). In this case, the endorsement makes the products-completed operations aggregate limit applicable to bodily injuries and property damages due to an insured's products, on, from, or in connection with the use of any premises or operation, described in the schedule, occurring both on and off the insured's premises. Under the standard definition of "products-completed operations hazard," in the main part of the policy, the products-completed operations aggregate limit applied only to incidents occurring away from the insured's premises.

The Friers reliance on language in such decisions as *Aid Insurance Services, Inc. v. Geiger*, 294 N.W.2d 411 and *Haugen v. Auto–Owners Insurance Company of Lansing, Michigan*, 191 N.W.2d 274, is misplaced. In *Aid Insurance Services, Inc. v. Geiger*, we said:

> "[B]ecause an insurance policy is a contract of adhesion, any ambiguity or reasonable doubt as to the meaning of the policy is to be strictly construed against the insurer and in favor of the insured. If the language in an insurance contract will support an interpretation which will impose liability on the insurer and one which will not, the former interpretation will be adopted."

294 N.W.2d at 414. In *Aid Insurance Services*, unlike the case before us, the relevant provisions of the insurance contract were in conflict and ambiguous. In *Aid Insurance Services* there was more than one reasonable interpretation of the language in question. In this case, the language of the endorsement is clear and unambiguous. For this reason, what we said in *Aid Insurance Services* is not applicable. Likewise, the general statement made in *Haugen*, 191 N.W.2d at 280, that "when there is conflict between the provisions of an insurance policy form proper and the endorsement attached thereto, the provisions of the latter prevail," is not applicable as there is no conflict. The endorsement in this case does not affect the general "dram shop" exclusion found in the main body of the policy.

The Friers also argue that where an "efficient cause of the loss is a covered risk under the policy, coverage cannot be defeated merely because an excluded risk contributed to the loss." *See Allstate Insurance Company v. Smith*, 929 F.2d 447 (9th Cir.1991). However, in the underlying action, the Friers have alleged no basis for liability separate from liability based on the furnishing of alcoholic beverages. *See generally Sheffield Insurance Company v. Lighthouse Properties, Inc.*, 234 Mont. 395, 763 P.2d 669 (1988); *Thornhill v. Houston General Lloyds*, 802 S.W.2d 127 (Tex.App.—Fort Worth 1991). This argument is without merit.

For the aforementioned reasons, the judgment of the district court is affirmed.

VANDE WALLE and MESCHKE, JJ., concur.

LEVINE, J., concurs in the result.

GIERKE, J., a member of the Court when this case was heard, resigned effective November 20, 1991, to accept appointment to the United States Court of Military Appeals and did not participate in this decision.