270 N.J. Super. 241 (1994)
636 A.2d 1091
GERALD DAUS AND CAROL ANN DAUS, PLAINTIFFS-APPELLANTS,
v.
JAKE MARBLE AND DANE MARBLE, DEFENDANTS/THIRD-PARTY PLAINTIFFS/RESPONDENTS,
v.
TRAVELERS INSURANCE COMPANY, THIRD-PARTY DEFENDANT/RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 30, 1993.
Decided February 9, 1994.
*243 Before BRODY, STERN and KEEFE, JJ.
Karen M. Reis argued the cause for appellants (Francis J. DeVito, attorney; Ms. Reis and Francis J. DeVito, on the brief).
Geoffrey Curran Rosamond argued the cause for defendants/third-party plaintiffs/respondents Jake Marble and Dane Marble.
*244 Mark Mattia argued the cause for third-party defendant/respondent Travelers Insurance Company (Nowell, Amoroso & Mattia, attorneys; Susanne M. Guadara, on the brief).
The opinion of the court was delivered by KEEFE, J.A.D.
Gerald Daus and Carol Ann Daus appeal from the entry of summary judgment in favor of defendant Jake Marble and third-party defendant, The Travelers Insurance Company (Travelers). We reverse the judgment entered in favor of Jake Marble, but affirm the judgment entered in favor of Travelers.
The following facts are not in dispute. On June 21, 1991, plaintiff Gerald Daus[1] and defendant Jake Marble were employed by Englewood Tire Warehouse and were on their employer's premises. Defendant Dane Marble, Jake Marble's 11 year old son, was also on the premises. Jake Marble apparently brought Dane to work that day to "babysit" him.
Daus was in the process of handing out keys to the company truck drivers when he was struck by a stack of pallets that were pushed into him by a forklift truck operated by Dane Marble. Daus contends that he received injuries as a result of that accident.
Daus's complaint alleges that Dane operated the forklift truck in a negligent manner. He further contends that Jake Marble "did not properly supervise his son," and "negligently permitted or allowed him to [operate] the hi-lo forklift truck[.]" The Marbles instituted a third-party action against Travelers contending that Travelers owed them a defense and indemnity under a homeowners insurance policy. Travelers answered the third-party complaint and subsequently moved for summary judgment on the grounds that the Travelers policy did not apply to bodily injury *245 "arising out of the ... use ... of motor vehicles or all other motorized land conveyances." As to Jake Marble, Travelers further contended that the policy did not cover bodily injury "arising out of business pursuits of an insured." On the return date of the summary judgment motion, the Law Division judge, sua sponte, requested the parties to brief the question of whether plaintiff's complaint against Jake Marble was barred by the fellow servant rule found in N.J.S.A. 34:15-8.
On the adjourned date of the motion, the judge concluded that the provisions of N.J.S.A. 34:15-8 barred plaintiff's suit against Jake Marble. He further found that a forklift vehicle was a "motorized land conveyance[]," within the meaning of the policy and entered summary judgment in favor of Travelers. The judge did not address the additional theory advanced by Travelers that coverage was precluded by the "business pursuits" exclusion.
Plaintiff appeals from both judgments. Defendants Marble have not filed a separate appeal from the summary judgment entered in favor of Travelers. However, they join plaintiff, who claims that genuine issues of fact were presented on the coverage issue, in the appeal against Travelers.

I
We first address the issue of whether the trial judge erred in granting summary judgment in favor of Jake Marble based upon the provisions of N.J.S.A. 34:15-8. The statute, in pertinent part, provides as follows:
If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong. [N.J.S.A. 34:15-8.]
Shortly after the statute was enacted in 1961, the Supreme Court had this to say about its purpose:
Reflecting the commonly-held view that the enterprise should be the final repository of the inevitable risk of loss, the Legislature recently provided that an employee shall not be liable for negligent injury of a co-employee entitled to workmen's *246 compensation benefits, L. 1961, c. 2, amending R.S. 34:15-8. [Eule v. Eule Motor Sales, 34 N.J. 537, 541, 170 A.2d 241 (1961).]
In order for the statute to apply as a bar to a suit against a co-employee, three conditions must be satisfied: (1) the plaintiff must have suffered a compensable injury; (2) the plaintiff and defendant must have been co-employees; and (3) the defendant must have been acting "in the course of his employment." Wunschel v. City of Jersey City, 96 N.J. 651, 659, 477 A.2d 329 (1984) (citing Konitch v. Hartung, 81 N.J. Super. 376, 379, 195 A.2d 649 [1963]). In this case it is clear that the first two conditions have been satisfied. Unquestionably, plaintiff's alleged injury arose out of and in the course of his employment with Englewood Tire Warehouse. N.J.S.A. 34:15-7. It is also undisputed that plaintiff and defendant Jake Marble were co-employees. The trial judge's analysis, however, went astray when he observed that the sole issue was "whether or not the plaintiff was injured or plaintiff's injury arose out of or in the course of his employment." The focal issue, as all parties appear to agree on appeal, is whether Jake Marble was also in the course of his employment during the time the alleged negligent conduct occurred.
Plaintiff contends that Jake Marble was not in the course of his employment at the critical time. His argument, succinctly stated, is as follows:
By bringing his son to work and baby-sitting he was not fulfilling a duty of his employment nor can it be tied into the employment relationship. Defendant was not doing something incidental to his employment. Since bringing his son to work was strictly of a personal nature, such activity withdraws him from the course of his employment. This conduct was nothing more than an unreasonable personal activity not within the course of his employment.
Jake Marble and Travelers simply argue in a conclusory way, without any case law support, that Jake Marble was in the course of his employment at the time of the accident.
Conduct leading up to an accident occurs in the course of the employment
if it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during the time to do that thing. [Coleman v. Cycle Transformer Corp., 105 *247 N.J. 285, 289, 520 A.2d 1341 (1986) (quoting Rafferty v. Dairymen's League Cooperative Ass'n, 16 N.J. Misc. 363, 200 A. 493 (Dep't of Labor, Workmen's Comp. Bureau, 1938).]
Clearly, Jake Marble's allegedly negligent conduct occurred during work hours and on his employer's premises. The only question remaining is whether he was doing what "a man so employed may reasonably do" at that time and place. Ibid. Plaintiff's contention that Jake Marble was not acting in the course of his employment simply because babysitting his son was a "personal" activity is not sufficient to overcome the defense. Conduct may be in the course of the employment if it occurs in the workplace and during work time if "the employee was engaged in personally motivated, but customary, or reasonably expectable activities." Mikkelsen v. N.L. Industries, 72 N.J. 209, 212, 370 A.2d 5 (1977); Coleman, supra, 105 N.J. at 289, 520 A.2d 1341. Closely allied with that concept is the "mutual benefit" doctrine, which permits a determination that certain activities are in the course of employment even if they were "other than those which an employee was hired to perform" where it can be said that "a clear and substantial benefit" has enured to the employer by reason of the permitted activity. Mikkelsen, supra, 72 N.J. at 213, 370 A.2d 5. At oral argument, plaintiff rejected the notion that what the employer knew, permitted or condoned in this context was relevant to the inquiry of whether Jake Marble was in the course of his employment at the time in question. However, it is clear to us that such an inquiry is not only relevant but critical to the determination of whether the defense asserted by Jake Marble is viable.
We thus conclude that there were insufficient facts before the trial judge to determine whether Jake Marble's decision to babysit his son on the job, though personally motivated, was, nonetheless, undertaken with such frequency and without objection that it became "customary, or reasonably expectable" from the standpoint of the employer. Id. at 212, 370 A.2d 5. We cannot lose sight of the fact that the provisions of N.J.S.A. 34:15-8 constitute a defense, and it is the defendant's burden to exclude genuine issues of fact before obtaining a summary judgment based upon *248 the statute. Marble's appellate brief, without any certification in support of the allegation, states: "Dane Marble had been present at the worksite on many previous occasions and had, in fact, on many previous occasions operated one or other of the fork lifts and was familiar with and experienced in the operation of the fork lifts." That bare allegation is insufficient to establish the conclusion as a matter of law that Dane's presence on the job site from the standpoint of the employer was such that it became "customary," and by reason thereof Jake was involved in "reasonably expectable activities" when he was babysitting Dane on the date in question.
Thus, we reverse the summary judgment entered in favor of Jake Marble and remand for further proceedings consistent with this opinion.

II
Summary judgment was granted in favor of Travelers in reliance on Section II Exclusion 1.e.(1) which states that personal liability coverage does not apply to bodily injury "arising out of: (1) the ... use ... of motor vehicles or all other motorized land conveyances ... operated by ... an `insured'[.]" Focusing solely on defendant Jake Marble, plaintiff contends that the allegations of the complaint were not based upon his use of a motor vehicle or other motorized land conveyance. Rather, plaintiff contends that because the complaint against Jake Marble alleges that his negligent supervision of his son was a proximate cause of plaintiff's injury, the claim is dependent upon conduct separate from the actual driving of the forklift. Plaintiff contends that his argument is supported by Salem Group v. Oliver, 248 N.J. Super. 265, 271, 590 A.2d 1194 (App.Div. 1991), aff'd, 128 N.J. 1, 607 A.2d 138 (1992).
In Salem Group, the insured provided both alcoholic beverages and an all-terrain vehicle to his minor nephew, Carl Oliver. The homeowner's insurer, Salem Group, denied coverage to the insured relying on an exclusion in its policy worded similarly to the *249 exclusion in the Traveler's policy in this case. The Law Division judge denied the insurer's motion for summary judgment. This court affirmed. The insurer appealed as of right to the Supreme Court because of a dissent in the Appellate Division.
In affirming the majority decision, the Supreme Court made it clear that the question of coverage for the insured turned on the peculiar facts of the case and the nature of the coverage afforded the insured. The fifth count of the complaint clearly alleged social host liability against the insured for supplying alcoholic beverages to Oliver. With respect to that count and the homeowners's policy, the Court observed:
No one disputes that insurers are generally obligated to defend their insureds on social host claims. The critical question is whether the insurer can avoid that obligation because a separate excluded risk, the operation of an all-terrain vehicle (ATV), constitutes an additional cause of the injury. We find that the insurer remains obligated to defend the covered risk. It may not avoid that obligation simply because the operation of an ATV constitutes an additional cause of the injury. [Salem Group, supra, 128 N.J. at 3, 607 A.2d 138 (emphasis added).]
The Supreme Court specifically distinguished cases, such as Salem Group, where the insured's liability for personal injuries can be premised on a theory wholly independent of negligent supervision involving an automobile (i.e., social host liability), from those cases, such as Allstate Ins. Co. v. Moraca, 244 N.J. Super. 5, 581 A.2d 510 (App.Div. 1990), where the plaintiff's theory of liability is based solely on the insured's failure to exercise sufficient control and supervision over a child in the operation of a motor vehicle. Id. at 5, 581 A.2d 510. In the latter cases, the Supreme Court recognized the justification for excluding coverage under the homeowners policy to the parent because
[t]the negligent entrustment or supervision cannot be isolated from the ownership and operation of the insured automobile. In contrast, the serving of alcohol to a minor does not depend on the insured's ownership of a motor vehicle or its entrustment to another. One need not own a motor vehicle to serve alcohol to another. [Salem Group, supra, 128 N.J. at 5, 607 A.2d 138.]
In Moraca, supra, a negligent supervision claim was made against the insured, Yodice, for injuries caused by the alleged reckless driving of her son, Daniel. Id. 244 N.J. Super. at 7, 581 A.2d 510. Allstate denied coverage based on its exclusion for *250 accidents "arising out of" the use of "any motorized land vehicle." Id. at 8, 581 A.2d 510. We held that the homeowner's insurance policy exclusion applied to claims against Yodice for damages based on negligent supervision. As noted earlier, that holding was impliedly approved by the Supreme Court in Salem Group, supra, 128 N.J. at 5, 607 A.2d 138.
Interestingly, the plaintiff in Moraca, supra, relied upon this court's earlier opinion in McDonald v. Home Ins. Co., 97 N.J. Super. 501, 235 A.2d 480 (App.Div. 1967), in support of her contention that the Allstate policy did not exclude claims for negligent supervision arising out of motor vehicle accidents. Plaintiff also relies upon McDonald in support of his claim in this case. However, the Moraca court noted the difference in the policy terminology in McDonald and observed that: "[s]ince the McDonald decision, the exclusionary language in homeowners' policies has been broadened considerably to eliminate coverage in claims involving motor vehicles." Moraca, supra, 244 N.J. Super. at 12, 581 A.2d 510. The Moraca court concluded that "[t]he isolation in McDonald of negligent supervision or entrustment from ownership, maintenance, operation or use of an automobile is contrary to the vast weight of authority including subsequent cases in New Jersey." Id. at 18, 581 A.2d 510. As noted earlier, our holding in Moraca was distinguished, but not criticized, by the Supreme Court in Salem Group, supra, 128 N.J. at 5, 607 A.2d 138. Thus, we conclude that plaintiff's reliance on Salem Group is misplaced.

III
Plaintiff also contends that there is a triable issue of fact as to whether a forklift is a "motorized land conveyance[]" within the meaning of the policy. "Insurance contracts are to be construed in accordance with the reasonable expectations of the average policy holder[,]" and any ambiguity must be resolved against the insurance company. Killeen Trucking, Inc. v. Great American Surplus Lines Ins. Co., 211 N.J. Super. 712, 715, 716, 512 A.2d 590 (App.Div. 1986). However, "the rule of liberal construction *251 `cannot operate to authorize a perversion of the language and the intent of the contracting parties.'" Salem Group, supra, 248 N.J. Super. at 271, 590 A.2d 1194 (quoting Sinopoli v. North River Ins. Co., 244 N.J. Super. 245, 250, 581 A.2d 1368 (App.Div. 1990), certif. denied, 127 N.J. 325, 604 A.2d 600 (1991)). Thus, in the absence of a specific definition in an insurance policy, the words must be interpreted in accordance with their ordinary, plain and usual meaning. Killeen Trucking, supra, 211 N.J. Super. at 714, 512 A.2d 590.
Webster's New Collegiate Dictionary (1980) defines "forklift" as a "self-propelled machine for hoisting and transporting heavy objects by means of steel fingers inserted under the load." This same dictionary defines "conveyance" as a "means of transport." The Oxford English Dictionary (1989) defines forklift as "a vehicle fitted with a pronged device in front for lifting and carrying heavy goods." Plaintiff argues that because a forklift is not a registered vehicle capable of being operated on a public street, it is not intended to be a motorized land conveyance within the meaning of the policy. We fail to see the relevancy of the argument. The only place in the exclusionary language where registration is a factor for non-applicability of the exclusion is where the vehicle involved is a "motorized land conveyance designed for recreational use of public roads, not subject to motor vehicle registration." Plaintiff has not claimed, indeed he cannot claim, that a forklift qualifies as a recreational vehicle under any reasonable interpretation of the policy language.
It is clear to us from the commonly accepted definitions of forklift that it is a motorized land conveyance under the terms of the insurance contract. The forklift is a motorized means of transporting cargo, while at the same time transporting the forklift operator. We find no difficulty in concluding that the average policy holder should expect that a motorized vehicle designed to transport cargo driven by a human operator would be considered a motorized land conveyance.
*252 Thus we conclude that the trial judge did not err in granting summary judgment to Travelers as to its insureds Jake and Dane Marble. In view of our conclusion, we need not address the alternative exclusion relative to Jake Marble under the business pursuit exclusion of the policy.
Affirmed in part, and reversed in part. The matter is remanded for further proceedings consistent with this opinion.
NOTES
[1] Carol Ann Daus, Gerald's wife, sues per quod. Her claim is irrelevant to these proceedings. Therefore, all references herein to "plaintiff" or "Daus" shall be to Gerald Daus.