## PROPERTY–OWNERS INSURANCE CO., Appellant,

v.

**TED'S TAVERN, INC. d/b/a Big Jim's Tavern, Louise Snider, Nina Newman, Linda Shaw, and Carole Stine, Individually and as Personal Representative of the Estate of William Roland Stine, Deceased, Appellees.**

No. 73A01–0602–CV–49.

Court of Appeals of Indiana.

Aug. 31, 2006.

974

Danford R. Due, Cynthia E. Brandhoff, Scott E. Andres, Due Doyle Fanning & Metzger, LLP, Indianapolis, IN, Attorneys for Appellant.

James D. Witchger, Rocap Witchger LLP, Indianapolis, IN, Attorney for Appellees Ted's Tavern, Inc. d/b/a Big Jim's Tavern, Louise Snider, Nina Newman, and Linda Shaw.

J. Lee McNeely, McNeely, Stephenson, Thopy & Harrold, Shelbyville, IN, Attorney for Appellee Carole Stine, Individually and as Personal Representative of the Estate of William Roland Stine, Deceased.

## OPINION

CRONE, Judge.

### Case Summary

Property–Owners Insurance Company ("Property–Owners") appeals an order

granting partial summary judgment in favor of Carole Stine, individually and as personal representative of the estate of William Roland Stine, deceased ("Stine"). We reverse and enter judgment for Property–Owners on the challenged counts.

## Issue

Property–Owners contends that the court committed reversible error in concluding as a matter of law that, upon the allegations of nuisance and negligent hiring, training, and supervision, (1) Property–Owners' Policy (the "Policy"[1]) provides coverage for the potential liability of Ted's Tavern, Inc. d/b/a Big Jim's Tavern ("Big Jim's"), Louise Snider, Nina Newman, and Linda Shaw; (2) Property–Owners has a duty to defend Big Jim's, Snider, Newman, and Shaw; and (3) Property–Owners has a duty to pay any judgment that may be awarded in favor of Stine against Big Jim's, Snider, Newman, and/or Shaw.

## Facts and Procedural History

On July 9, 2004, in Shelby Superior Court, Stine filed suit[2] against Big Jim's, Snider, Newman, and Shaw, seeking recovery for damages arising from a motor vehicle collision. App. at 11–20. Stine's complaint made the following allegations. On the evening of April 24, 2003, Newman and Shaw were working at Big Jim's, which was owned by Snider. Between approximately 7:45 p.m. and 9:30 p.m., Newman and Shaw served a total of four Long Island Ice Teas to Alan Wickliff, a patron of Big Jim's. Shortly after leaving Big Jim's, Wickliff drove his vehicle head-on into a car driven by William Roland Stine, who died as a result of the accident. At the time of the collision, Wickliff was intoxicated and operating his vehicle with a blood alcohol level of .21. Stine's complaint raised four counts: (I) negligence; (II) negligently hiring, training, and supervising employees; (III) violations of the Dram Shop Act;[3] and (IV) nuisance.

On September 27, 2004, in Shelby Circuit Court, Property–Owners filed a declaratory judgment action[4] against Big Jim's, Snider, Newman, Shaw, and Stine. Id. at 6–10. In that complaint, Property–Owners alleged that it had issued to Big Jim's the Policy, a Commercial General Liability Policy that was in force and effect on April 24, 2003. Property–Owners requested declarations with regard to the Shelby Superior Court action, specifically, that (1) the Policy provides no coverage for the potential liability of Big Jim's, Snider, Newman, and Shaw; (2) Property–Owners has no duty to defend; and (3) Property–Owners has no duty to pay any judgment that may be awarded to Stine. Id. at 9.

Stine filed an answer to the declaratory judgment complaint, as did Big Jim's, Snider, Newman, and Shaw. On April 21, 2005, Property–Owners filed a motion for summary judgment, memorandum in support thereof, and designation of evidence. On May 17, 2005, Stine filed a cross motion for summary judgment, memorandum in support thereof, and designation of evidence. On January 10, 2006, the trial court issued its order granting partial summary judgment in favor of Property–Owners and partial summary judgment in favor of Stine. Id. at 250–53. Specifically, the court issued summary judgment in Property–Owners' favor on the first and third counts. Thus, regarding the negli-

---

**1.** The relevant identification number for the Policy is: 944602–09527918–02. Appellant's App. at 9.

**2.** The cause number for the Shelby Superior Court action is 73D01–0407–CT–32.

**3.** Indiana Code Section 7.1–5–10–15.5 is known as the Dram Shop Act.

**4.** The cause number for the Shelby Circuit Court action is 73C01–0409–CT–22.

gence and Dram Shop claims, the Policy provides no coverage for the potential liability of Big Jim's, Snider, Newman, and Shaw, and, Property–Owners has no duty to defend or to pay any judgment that may be awarded to Stine. As for the second and fourth counts, the court issued summary judgment in Stine's favor. Accordingly, regarding claims of negligent hiring, training, and supervising employees, as well as nuisance, the Policy provides coverage for the potential liability of Big Jim's, Snider, Newman, and Shaw, and, Property–Owners has a duty to defend and to pay any judgment that may be awarded to Stine.

On February 3, 2006, Property–Owners filed its notice of appeal.

### Discussion and Decision

Property–Owners raises a two-part challenge to the court's conclusion that, regarding allegations of nuisance and negligent hiring, training, and supervision, the Policy provides coverage for potential liability and requires Property–Owners to defend Big Jim's, Snider, Newman, and Shaw. First, Property–Owners contends that all the claims in the underlying action against Big Jim's, including negligent hiring, training, and supervision and nuisance, are based upon the service or sale of alcohol to Wickliff, which is the efficient and predominating cause of Big Jim's liability to Stine. As such, the claims are excluded from coverage in the Policy. Second, Property–Owners asserts that the Policy language was not ambiguous as to the meaning of "intoxication" and/or "under the influence." Logic dictates that we address the ambiguity question first.

Our analysis begins with our well-settled standard of review.

Summary judgment is appropriate when the designated evidentiary matter reveals that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that there is an entitlement to judgment as a matter of law. If the moving party meets these requirements, the burden then shifts to the nonmovant to establish genuine issues of material fact for trial.

In considering an appeal from the grant or denial of summary judgment, we are bound by the same standard as the trial court. We consider only those facts which were designated to the trial court at the summary judgment stage. We do not reweigh the evidence, but rather, liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact. Even if the facts are undisputed, summary judgment is inappropriate where the record reveals an incorrect application of law to the facts.

*Messer v. Cerestar USA, Inc.,* 803 N.E.2d 1240, 1243–44 (Ind.Ct.App.2004) (citations omitted), *trans. denied.* "An appellant bears the burden of demonstrating it was error to grant summary judgment[.]" *Bolin v. Wingert,* 764 N.E.2d 201, 203 (Ind. 2002).

### *No Ambiguity in Relevant Portions of Policy*

"The construction of an insurance policy is a question of law for which summary judgment is particularly appropriate." *Amerisure, Inc. v. Wurster Constr. Co.,* 818 N.E.2d 998, 1001 (Ind.Ct. App.2004), *clarified on reh'g on other grounds,* 822 N.E.2d 1115 (2005). As we do with other contracts, we interpret an insurance policy with the goal of ascertaining and enforcing the parties' intent as manifested in the insurance contract. *See*

*Burkett v. Am. Family Ins. Group,* 737 N.E.2d 447, 453 (Ind.Ct.App.2000). "Although some special rules of construction of insurance contracts have been developed due to the disparity in bargaining power between insurers and the insured, if an insurance contract is clear and unambiguous, the language therein must be given its plain and ordinary meaning." *Beam v. Wausau Ins. Co.,* 765 N.E.2d 524, 527 (Ind.2002). Moreover,

> [a]n insurance policy that is unambiguous must be enforced according to its terms, even those terms that limit an insurer's liability. Thus, we may not extend insurance coverage beyond that provided by the unambiguous language in the contract. Moreover, insurers have the right to limit their coverage of risks and, therefore, their liability by imposing exceptions, conditions, and exclusions. However, to be enforced, these limitations must be clearly expressed and must be consistent with public policy.
>
> An insurance contract will be deemed ambiguous only if reasonable people would honestly differ as to the meaning of its terms. However, an insurance contract is not regarded as ambiguous simply because controversy exists, and the parties have asserted contrary interpretations of the language of the contract.

*Amerisure,* 818 N.E.2d at 1002 (citations omitted).

■ The relevant portions of the Policy issued to Big Jim's are as follows:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

\* \* \*

### SECTION I—COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement.**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages.

\* \* \*

**2. Exclusions.**

This insurance does not apply to:

\* \* \*

c. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) *Causing or contributing to the intoxication of any person;*

(2) The *furnishing of alcoholic beverages to a person* under the legal drinking age or *under the influence of alcohol;* or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

App. at 22, 23 (emphases added).

As Stine, Big Jim's, Snider, Newman, and Shaw correctly point out, the Policy does not contain a special definition for either "intoxication" or "under the influence." However, neither the lack of particular definition within the Policy nor the Appellees' assertions of contrary interpretations of these terms convince us that ambiguity exists. Despite counsel's efforts during depositions to create uncertainty

regarding the terms' meanings,[5] we cannot say that *reasonable people would honestly differ* as to the meaning of "intoxication" or "under the influence" within the context used in the Policy. That being the case, we look at the plain and ordinary definition of each, as gleaned from English dictionaries. *See, e.g., Smith v. State Lottery Comm'n of Indiana,* 812 N.E.2d 1066, 1072 (Ind.Ct.App.2004), *trans. denied.* "Intoxication" is synonymous with drunkenness or inebriation. *See* Merriam–Webster On–Line Dictionary, intoxication, *http://www.m-w.com/dictionary/intoxication* (last visited Aug. 10, 2006); *see* Wikipedia, the free encyclopedia, intoxication, *http://en.wikipedia.org/wiki/Intoxication* (last visited Aug. 10, 2006) (redirects user to "drunkenness," which "in its most common usage, is the state of being intoxicated with ethyl alcohol to a sufficient degree to impair mental and motor functioning."); *see also* Black's Law Dictionary 841 (8th ed. 2004) ("A diminished ability to act with full mental and physical capabilities because of alcohol or drug consumption; drunkenness."). Similarly, the plain and ordinary meaning of "under the influence"—especially when followed by "of alcohol"—is intoxicated/impaired by alcohol. In sum, exclusion 2(c) is clear: the Policy provides no coverage for an insured who is held liable for bodily injury or property damage resulting from (1) causing or contributing to the inebriation of a person, or (2) furnishing alcoholic drinks to someone who is impaired.

██ To the extent that there is some contention that the Nonownership/Hired Auto Endorsement eliminates exclusion 2(c), we disagree. The relevant endorsement provides:

5. *See* App. at 174 (counsel indicating that because he is not a bartender, he does not

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COMMERCIAL GENERAL LIABILITY PLUS ENDORSEMENT**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE PART.**

It is agreed the insurance provided under this Coverage Part is amended as follows:

* * *

**2. NONOWNERSHIP/HIRED AUTO COVERAGE**

Coverage for "bodily injury" and "property damage" liability provided under COVERAGE A is extended as follows under this item, but only if you do not have any insurance available to you which affords the same or similar coverage.

**Coverage**

We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" arising out of the maintenance or use of an "auto" you do not own or which is not registered in your name, *but which is used in your business.*

App. at 41 (emphasis added). The emphasized language makes clear that the endorsement provides coverage when injury/damage results from an auto utilized for Big Jim's business purposes. To read it more expansively would be to ignore the above italicized language and to render completely meaningless exclusion 2(c)—re-

"have a clue" what "intoxicated" means).

sults we try to avoid when construing contracts. *See Peoples Bank & Trust Co. v. Price,* 714 N.E.2d 712, 716 (Ind.Ct.App. 1999) (noting that we "make all attempts to construe the language" so as not to "render any words, phrases, or terms ineffective or meaningless."), *trans. denied; see also Burkett,* 737 N.E.2d at 452 (noting that we accept interpretations of the contract language that harmonize provisions rather than those which support conflicting version of provisions).

### Efficient and Predominant Cause

■ We next address Property–Owners' main argument, which is: based upon the allegations contained in Stine's complaint, and even considering later allegations related to Wickliff's drug use, the Policy provides no coverage to Big Jim's in the underlying matter, because the only sustainable counts against Big Jim's arise out of or are related to the intoxication of Big Jim's patron, Wickliff, which the Policy clearly excludes. The parties have provided, and we have found, no Indiana cases precisely on point. However, in resolving the case at bar, we find instructive the efficient and predominant cause analysis, as set out in both *Wright v. American States Insurance,* 765 N.E.2d 690, 692 (Ind.Ct.App.2002), and *Illinois Farmers Insurance v. Wiegand,* 808 N.E.2d 180 (Ind.Ct.App.2004), *trans. denied.*

In *Wright,* we addressed whether an auto use exclusion barred coverage for a claim of negligent supervision. There, a child died and another was injured while riding as passengers in a van, which was being driven by a day care center employee when it was involved in a collision. *Wright,* 765 N.E.2d at 692. The children's parents brought an action against the day care, alleging, *inter alia,* that the day care was negligent for failing to investigate its employee's driving record and for employing an incompetent driver with a suspend-

ed license. *Id.* The day care center's insurer then brought a declaratory judgment action to determine whether it owed a duty to defend and provide coverage. *Id.* The insurer filed a summary judgment motion, arguing that it did not have a duty to indemnify or defend the day care center because the children's injuries arose from the "ownership, maintenance, use or entrustment" of the day care center's van. *Id.* at 692, 694. Agreeing that such policy language excluded the claim, the trial court granted summary judgment. On appeal, we affirmed that

> the *efficient and predominating cause* of the injuries was [the] use of the van. Without the use of the van, there would be no lawsuit. [The plaintiffs] are not alleging that [the day care's] failure to investigate [the employee's] driving record, or its employment of an incompetent driver with a suspended license was a separate or independent proximate cause of the harm. The *immediate and efficient cause* of [the children's] injuries and the [plaintiffs'] claims arising from those injuries is [the employee's] use of the automobile.

*Id.* at 697 (emphases added).

Two years after *Wright,* a panel of this court was presented with *Wiegand,* another vehicle use exclusion case. There, the homeowners' insurer sought a declaratory judgment that the relevant policy provided no liability coverage for a claim of negligent supervision of the driver of the insureds' all-terrain vehicle ("ATV") who was injured in an accident off the insureds' property. *Wiegand,* 808 N.E.2d at 182. The trial court granted partial summary judgment, finding that the ATV was a motor vehicle under the policy, but then found coverage for the negligent supervision claim. On appeal, we affirmed the former finding and reversed the latter finding. *Id.* at 192. In doing so, we quot-

ed favorably a "majority of jurisdictions," which have reasoned that

> where the negligent supervision is *so inextricably intertwined* with the motor vehicle, there is no independent nonauto-related act which would take the claim out of the scope of the motor vehicle exclusionary clause. Thus, negligent supervision claims are excluded from coverage where the acts complained of could not have resulted in injury but for the use of the automobile.

*Id.* at 191 (emphasis added) (quoting *Taylor v. Am. Fire & Cas.*, 925 P.2d 1279, 1282–83 (Utah Ct.App.1996); also noting *Phillips v. Estate of Greenfield*, 859 P.2d 1101, 1106 (Okla.1993), and *Daus v. Marble*, 270 N.J.Super. 241, 636 A.2d 1091, 1096 (N.J.Super.A.D.1994)). Specifically, we concluded that the negligent supervision claim was excluded by the policy because the "immediate and efficient cause" of the ATV's operator's injuries and the claims arising from those injuries was the operator's use of the ATV. *Id.* at 190 (citing *Wright*, 765 N.E.2d at 697). That is, "without the use of the ATV, there would be no claim for negligent supervision." *Id.*

In applying the efficient and predominating cause analysis here, we begin with a review of Stine's complaint, in which she includes "allegations common to all counts." *See* App. at 11–13. These allegations identify the parties and then set out Stine's version of the facts as follows:

10. On April 24, 2003, Allan [sic] Wickliff was a patron of Big Jim's Tavern from approximately 7:45 p.m. to 9:30 p.m. and was served alcoholic beverages by employees of Ted's Tavern, Inc. d/b/a Big Jim's Tavern.

11. Between approximately 7:45 p.m. and 9:30 p.m., on April 24, 2003, Allan [sic] Wickliff was served four (4) Long Island Ice Teas, the equivalent of 18 shots of alcohol, by employees of Ted's Tavern, Inc. d/b/a Big Jim's Tavern, namely Nina Newman and Linda Shaw.

12. On April 24, 2003, at approximately 9:42 p.m., after leaving Big Jim's Tavern, Allan [sic] Wickliff was operating his vehicle on westbound State Road 44 near County Road 700 East in Johnson County, Indiana when he collided head-on with an eastbound vehicle being operated by William Roland Stine.

13. At the time of the collision, Allan [sic] Wickliff was intoxicated. Mr. Wickliff was operating his vehicle with a blood alcohol level of .21, which is more than 2½ times the legal limit in Indiana.

14. William Roland Stine suffered severe injuries in the collision and died on April 24, 2003, as a result of said injuries.

15. As a direct and proximate result of the negligence of the Defendants, and each of them, the estate of William Roland Stine has incurred medical, funeral and other related expenses.

16. As a direct and proximate result of the acts and omission of the Defendants, and each of them, plaintiffs incurred the following damages:

> (a) Physical pain and mental suffering of William Roland Stine;
>
> (b) Medical and funeral expenses incurred;
>
> (c) Carole Stine's loss of love, care, affection and companionship of her husband;
>
> (d) Carole Stine's loss of the value of services and future earnings of her husband;
>
> (e) Such other damages as are legally entitled to be recovered by plaintiffs under the law of the State of Indiana.

17. Plaintiff, Carole Stine, individually and as Personal Representative of the Estate of William Roland Stine is enti-

tled to judgment against the Defendants, Ted's Tavern, Inc. d/b/a Big Jim's Tavern, Louise Snider, Nina Newman and Linda Shaw, in an amount commensurate with the losses and damages sustained in order to fairly and adequately compensate her, for the costs of this action, and for all other relief just and proper in the premises.

*Id.* at 12–13. There can be little doubt as to the gist of these allegations: Wickliff consumed a very large amount of alcohol in a short amount of time at Big Jim's, and his resultant drunk driving killed William Roland Stine. Stated otherwise, Wickliff's driving while intoxicated was the efficient and predominating cause of the fatal collision.

Within Count I (negligence), Stine incorporated by reference the common allegations and added the specific allegations that the defendants "carelessly and negligently served" and continued to serve alcoholic beverages to Wickliff when they knew or should have known he was intoxicated and soon thereafter could be driving. *Id.* at 14. Along that same vein, Stine also alleged that the defendants "negligently failed to adequately monitor and supervise their sales business activities" and "negligently and carelessly failed to properly educate and train employees in the sale of alcoholic beverages" to minimize drunk driving. *Id.* at 14, 15. Given the clarity of Policy exclusion 2(c), the trial court correctly granted summary judgment to Property–Owners on Count I.

█ Similarly, the court properly granted summary judgment to Property–Owners on Count III, which alleged that the defendants violated the Dram Shop Statute [6] by "carelessly and negligently serv[ing] alcoholic beverages to [Wickliff]

while they knew" or should have known he was intoxicated. *Id.* at 17. Again, exclusion 2(c) clearly bars coverage. This leads us to Counts II and IV.

█ The negligent hiring, training, and supervision count incorporated by reference the common allegations and added the following allegations. Newman and Shaw either were "carelessly" *not* trained or supervised, or were "inadequately trained and supervised" and "incompetent and unfit to perform the work required as bartenders[.]" *Id.* at 15. Big Jim's and Snider "knew or should have known that persons in William Roland Stine's position would be subjected to an unreasonable risk of harm from the actions of" Newman and Shaw. *Id.* at 16. Big Jim's and/or Snider "breached the duty owed" to Stine to use "reasonable and ordinary care in hiring, training, and supervision of its employees." *Id.* Big Jim's and Snider breached a duty to Stine "when they failed to exercise such reasonable care as if [sic] necessary to prevent" Newman and Shaw from "conducting themselves in a manner which would create an unreasonable risk of harm" to Stine and from "misusing property or instrumentalities which" Big Jim's and/or Snider "entrusted to them." *Id.* Big Jim's and/or Snider breached a duty in retaining Newman and Shaw "when they knew or reasonably should have known" that Newman and Shaw "were in the habit of misconducting themselves in a manner dangerous to others" and when Big Jim's and/or Snider "failed to take appropriate steps to stop the misconduct" or "reasonably should have discovered the misconduct." *Id.* at 17.

The nuisance count incorporated by reference the prior allegations and then alleged that Big Jim's, Snider, Newman and Shaw:

---

**6.** Incidentally, when asked during her deposition if she was ever offered Dram Shop insurance coverage, Snider testified, "No, because I couldn't afford it." App. at 217.

"committed acts that were injurious to health so as to interfere with the comfortable enjoyment of life or property of" Stine and others;

"caused an unreasonable interference with a common right shared by" Stine and others;

"acted to the detriment of" Stine and others;

"operated Big Jim's, including its property and instrumentalities, in a way so as to injure" Stine and others;

"failed to properly manage and control the activities at Big Jim's in using ordinary care and maintaining proper regard for the rights of" Stine and others; and

"created and maintained a nuisance that was inherently dangerous to" Stine and others.

*Id.* at 18, 19. The complaint contains no allegation regarding any intoxicating substance besides alcohol.

Regardless of the theories of liability a resourceful attorney may fashion from the circumstances of this case, the allegations within Counts II and IV are general "rephrasings" of the core negligence claim for causing/contributing to Wickliff's drunk driving. *See Wright,* 765 N.E.2d at 695 (quoting *Northbrook Prop. & Cas. Co. v. Transp. Jt. Agreement,* 194 Ill.2d 96, 251 Ill.Dec. 659, 741 N.E.2d 253, 254 (Ill.2000)). The events outlined in Counts II and IV simply are not wholly independent of "carelessly and negligently" serving and continuing to serve alcoholic beverages to Wickliff when the defendants knew or

should have known he was intoxicated and soon thereafter could be driving drunk. To the contrary, the nuisance and the negligent hiring, training, and supervision are so inextricably intertwined with the underlying negligence that there is no independent act that would avoid exclusion 2(c).[7] Hence, while a valiant effort to procure coverage, the creative pleading of Counts II and IV cannot hide the reality that the immediate and efficient cause of the injuries was drunk driving precipitated by the negligent service of alcohol. As such, exclusion 2(c) precludes coverage. Sadly, tragedies resulting from the over-service of alcohol remain an all-too-frequent occurrence for our citizens.[8] While we recognize the horrible loss suffered here, we are not at liberty to extend insurance coverage beyond that provided by the unambiguous language in the Policy. *Cf. Franz v. State Farm Fire & Cas. Co.,* 754 N.E.2d 978, 981 (Ind.Ct.App.2001) (upholding nonrecovery where the use of a bus was the "efficient and predominating cause" of injuries, thus falling within policy exclusion for use or operation of an auto or motor vehicle), *trans. denied.*

We hold that the court committed reversible error in concluding as a matter of law that, upon the allegations of nuisance and negligent hiring, training, and supervision, (1) the Policy provides coverage for the potential liability of Big Jim's, Snider, Newman, and Shaw; (2) Property–Owners has a duty to defend Big Jim's, Snider, Newman, and Shaw; and (3) Property–Owners has a duty to pay any judgment that may be awarded in favor of Stine

---

**7.** Indeed, absent Wickliff's intoxication at the time of the accident, no lawsuit would have arisen. Had Wickliff been served no alcohol at Big Jim's, it is unfathomable that Big Jim's, Snider, Newman, or Shaw would have been sued.

**8.** According to the Indiana Criminal Justice Institute, Council on Impaired and Dangerous Driving, "Alcohol is a factor in at least 37% of all fatal crashes in Indiana." *http://www.in.gov/cji/impaired/dyk.html* (last visited Aug. 17, 2006). Moreover, every 33 minutes someone is killed in an impaired driving crash. *Id.*

against Big Jim's, Snider, Newman, and/or Shaw. Therefore, we must reverse the order granting partial summary judgment in favor of Stine and enter judgment for Property–Owners on the challenged counts. In doing so, we reiterate that insurers are entitled to limit their coverage of risks and, thus, their liability by imposing exceptions, conditions, and exclusions. *See Amerisure*, 818 N.E.2d at 1002. Further, we note that we are not the first jurisdiction to enforce such exclusions under similar circumstances. *See Cusenbary v. United States Fidelity and Guaranty Co.*, 307 Mont. 238, 37 P.3d 67, 70 (2001) (finding that where evidence of improper hiring, training, and supervision was directly related to the service or sale of alcohol, former claims were excluded from coverage under policy's liquor liability/intoxication exclusion); *see also Cont'l W. Ins. Co. v. The Dam Bar*, 478 N.W.2d 373, 374–76 (N.D.1991) (finding no sustainable basis for liability separate from liability based upon serving alcoholic beverages, thus liquor liability/intoxication exclusion excluded coverage for all counts, including negligent hiring, training, and supervision, even if those counts did not contain specific allegations related to or arising from the sale or service of liquor to an intoxicated patron).

Reversed and Judgment Entered for Property–Owners on challenged counts.

BAKER, J., and VAIDIK, J., concur.